**In the Matter of GROGG FARMS, INC., Debtor.**

**Bankruptcy No. 87–10103.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Sept. 22, 1988.

Jerome T. Holderead, Marion, Ind., for movant.

James P. McCanna, Auburn, Ind., for debtor.

## AMENDED ORDER

ROBERT E. GRANT, Bankruptcy Judge.

This case arises under Chapter 12 of the United States Bankruptcy Code. Debtor's amended plan was confirmed by this court's order of August 7, 1987. The matter is now before the court on a motion for relief from stay filed on behalf of a secured creditor, Phoenix Mutual Life Insurance Company. The motion is premised upon debtor's material default under the terms of the confirmed plan. Debtor does not dispute this fact. Instead, debtor's response to the motion was an application to modify the confirmed plan in order to cure the post-confirmation default. In opposition to this response, creditor argues that, given the particular provisions of the confirmed plan, debtor may not modify it in order to change its payment obligations.

Paragraph 2(a) of the amended plan addresses the secured claim of Phoenix Mutual. After establishing the manner in which this creditor's claim will be paid, the plan reads:

> Should the debtor at any time be more than thirty days in default in its obligations to Phoenix assumed in this plan, Phoenix shall have the right to an order lifting the automatic stay within ten days of service of said verified pleading.

It is this provision which the creditor seeks to enforce.

The parties do not dispute either the fact of the debtor's default or that the appropriate notices have been given. The matter was submitted upon the stipulation of parties, made at the pre-trial conference, and the briefs of counsel. The merits of the proposed modification are not before the court. Instead, the issue the court has been called upon to resolve is whether the terms of the confirmed plan preclude modification over the objectin of the affected creditor. If so, creditor's motion for relief from stay is well taken and should be granted.

The briefs of the parties have not directed the court to any reported decisions which have confronted similarly unique circumstances. In the same fashion the court's own research has not discovered anything which it would consider guiding precedent. All of the cases, to which the

court has been directed or which the court has reviewed, address the propriety of a particular modification rather than the power to modify. Consequently, it appears we are confronted with a case of first impression.

Section 1227(a) of the United States Bankruptcy Code addresses the effect of confirmation. In relevant part, it provides:

The provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan. 11 U.S.C. § 1227(a).

Post confirmation modification of the plan is, however, possible. Under the provisions of § 1229,

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, on the request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan. 11 U.S.C. § 1229(a).

There is an obvious tension between these two provisions of the Bankruptcy Code. If confirmation truly binds the parties, the plan should be incapable of modification. The opportunity to modify, however, suggests that a confirmed plan is not binding. Obviously, neither section can mean precisely what a strict construction of its terms would seem to indicate. If so, the statute would produce an irreconcilable and an insoluble conflict. This case requires the court to resolve this conflict and to relax the tension which exists between these two sections, by harmonizing their seemingly contradictory provisions.

In part, the resolution of this conflict can be found in Congress' overall vision of the role the bankruptcy court plays in the "reorganization" proceedings governed by Chapters 11, 12, and 13. Proceedings under these chapters were designed to be participatory. The bankruptcy court was created, not so much as an instrument which would impose solutions to economic problems upon parties but, instead, as a forum in which those parties could be compelled to meet in order to reach a mutually satisfactory resolution to a common problem. This concept of participation lies behind the Code's various provisions concerning acceptance of a proposed plan. Where creditors accept the plan, the court does not need to consider whether their treatment complies with the Bankruptcy Code's standards for confirmation. Instead, it is only when the debtor and its creditors cannot agree upon a common solution that the court needs to become directly involved, through a contested confirmation hearing and the imposition of a particular arrangement upon them.

■ The participatory nature of bankruptcy proceedings can lead to the inclusion of provisions in a plan which neither a debtor nor a creditor could legally insist upon, if the court were required to impose a solution. Such a plan is the product of the give and take of negotiations where each party, acting in its own self interest, attempts to maximize its return under a particular set of unfortunate circumstances. The court need not concern itself with the specific reasons why a particular provision was included or excluded from a plan. The reasons themselves are potentially limitless. Instead, it is only necessary to recognize that Congress expected such negotiations and that the terms of a confirmed plan can be and very often are the product of them. Because of this, the court should approach the question of modification with some caution. If we fail or refuse to give effect to the terms of a confirmed plan and

the legitimate expectations of the parties under it, we will undermine the participatory nature of bankruptcy proceedings.

The default provision contained in the confirmed plan, while not uncommon, is just such a negotiable term. It is not one that the creditor could have legitimately insisted upon, in opposition to confirmation, or that the debtor could have been compelled to include, as a condition of confirmation. Its presence neither adds to nor detracts from the confirmability of the plan. So long as the plan complied with the requirements of 11 U.S.C. § 1225(a)(5), it could have been confirmed with or without it.

■ Confirmation of a plan binds both the debtor and its creditors to the plan's provisions. 11 U.S.C. § 1227(a). A confirmed plan must have this binding effect because of the need for finality in determining the rights and duties of the various parties. *Matter of Winterfeldt*, 28 B.R. 486, 488 (Bankr.E.D.Wis.1983). Consequently, confirmation is res judicata as to those issues which could have and should have been raised prior to or in connection with confirmation. Once a plan has been confirmed, neither a debtor nor a creditor can assert rights which are inconsistent with its provisions. See *In Re Evans*, 30 B.R. 530, 531 (9th Cir.B.A.P.1983); *In Re Lewis*, 64 B.R. 415, 417 (Bankr.E.D.Penn. 1986); *In re Lewis*, 8 B.R. 132, 137 (Bankr. D.Idaho 1981).

The need for finality, however, is not necessarily paramount. Changing fortunes and unexpected circumstances also create a need for flexibility. This need is addressed by § 1229. The legislative history to its Chapter 13 counterpart, 11 U.S.C. § 1329, indicates "if a problem arises in the execution of the plan, the bill permits modification of the plan ..." H.Rep. No. 95–595, pg. 125, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6086, reprinted in 9 Bkr. L.Ed. § 82:4. There is no particular threshold which determines when a debtor may seek modification of a confirmed plan. All that would seem to be required is "a proper showing of changed circumstances." *In re Moseley*, 74 B.R. 791, 799 (Bankr.C.D.

Cal.1987) (discussing 11 U.S.C. § 1329). Nonetheless, not every change in circumstances will warrant modification. Instead, "the underlying facts must not have been known ... at the time of the original confirmation hearing." 5 Collier on Bankruptcy para 1229.01, at 1229–2 (15th ed. 1987).

■ Post-confirmation modification is only warranted when an unanticipated change in circumstances affects the implementation of the plan as confirmed. The right or the opportunity to modify, thus, exists only in order to address unforeseen circumstances whose consequences are not provided for by the plan as originally written and confirmed. If the plan anticipates a particular event and addresses the rights and duties of the parties, should that event occur, there is no need to modify. Instead, one only needs to implement the contingency provisions contained in the original plan.

■ In this case, the debtor's default, while unfortunate, was not unforeseen. The plan, as written and confirmed, specifically recognizes the possibility that the debtor might not be able to comply with its provisions. In this event, should a default exist for more than thirty days, Phoenix Mutual is entitled to the entry of an order terminating the stay. That it should have done so in this instance cannot be considered either unexpected or unforeseen. Relief from the stay would, thus, fulfill the legitimate expectations of *both* the debtor and the creditor, given the terms of the confirmed plan.

This court therefore holds that where a confirmed plan specifically provides that a secured creditor shall be relieved of the automatic stay in the event of default, the debtor may not modify the plan, in order to avoid the consequences of that default, over the objection of the affected creditor. To permit modification would not only frustrate the parties' legitimate expectations, as set forth in the plan, but would also allow the debtor to assert rights which are inconsistent with those given it under the confirmed plan. Where the creditor objects, the proper course of action is to implement the terms of the confirmed plan.

Phoenix Mutual obviously will not acquiesce in the proposed modification and the debtor's material default in the performance of its obligations under the confirmed plan constitutes cause, pursuant to 11 U.S.C. § 362(d)(1), to terminate the automatic stay.

IT IS THEREFORE ORDERED that Phoenix Mutual Life Insurance Company be and hereby is relieved of the automatic stay so that it can foreclose upon or proceed against the property securing payment of the debtor's obligations to it.