**In re Lee MADER, Debtor–Appellant.**

**No. 89 C 20113.**

United States District Court,
N.D. Illinois, W.D.

Nov. 30, 1989.

See also, D.C., 100 B.R. 989.

Scott Boyd, Rockford, Ill. and Edward
Mitchell, Lanark, Ill., for debtor-appellant.

Stephen Balsley, Bradley Koch, Daniel
Donahue, and Thomas J. Lester, Rockford,
Ill., for respondent.

## MEMORANDUM OPINION
## AND ORDER

ROSZKOWSKI, District Judge.

This action comes before the Court on
debtor-appellant Lee Mader's appeal from a
ruling of the Bankruptcy Court for the
Northern District of Illinois, Western Divi-
sion, Honorable Judge Richard N. DeGun-
ther, presiding. Debtor-appellant here ap-
peals the Bankruptcy Court's holding that
effectively bars the exercise of rights of
modification under Bankruptcy Code Sec-
tion 1229 in favor of the mandatory lan-
guage of Bankruptcy Code Section 1227.
For the reasons set forth in the Memoran-
dum Opinion below, this Court reverses the
ruling of the Bankruptcy Court insofar as
it holds that Code Section 1227 precludes,
as a matter of law, an evidentiary hearing
and independent determination of the appli-
cation of Code Section 1229. Further, this
Court remands the case back to the Bank-
ruptcy Court for such evidentiary and oth-
er proceedings pursuant to Code Section
1229 which are not inconsistent with this
opinion.

### STATEMENT OF THE FACTS

The debtor-appellant, Lee Mader, filed a
voluntary petition for relief under Chapter
12 of Title 11 of the United States Bank-
ruptcy Code (hereinafter "Code") on Febru-
ary 5, 1987. On February 19, 1987, debtor
filed his original plan of reorganization.
Certain secured creditors, among them the
Mount Carroll National Bank and the Fed-
eral Land Bank of St. Louis, now known as
the Farm Credit Bank of St. Louis, as well
as the Chapter 12 Trustee, filed objections
to the confirmation of debtor's proposed
plan of reorganization of February 19,
1987. The primary basis for the objections
rested on the belief that debtor would not
be able to make all payments called for
under the proposed plan.

The various parties held extensive nego-
tiations which eventually resulted in the

filing of a second amended plan (June 5, 1987), a third amended plan (June 31, 1987), and a fourth amended plan (August 6, 1987). On August 17, 1987, a confirmation hearing was held before the Bankruptcy Court on the fourth amended plan of reorganization. At that time, the Bankruptcy Court entered separate orders adopting certain stipulations and agreements between the various parties modifying the proposed amended plan. The orders of the court provided, *inter alia,* for the following:

> Should the debtor fail to make any payment required under either reamortized loan agreement and such failure shall continue for a period of 30 days, then, at the option of the Land Bank;
>
> A. The case shall be converted to a Chapter 7 proceeding;
>
> B. The debtors should be required to deliver deeds in lieu of foreclosure to the Land Bank; or
>
> C. A plan trustee shall be appointed to sell the property free and clear as set forth herein.

In addition, the court's order provided some detailed procedures in the event of default. The modified plan, containing the creditor's expedited default remedies (or so-called "drop-dead" clauses) was confirmed.

On September 9, 1988, subsequent to debtor's default on various obligations under the confirmed plan, debtor filed a motion to modify the confirmed plan pursuant to Code Section 1229. On February 16, 1989, after arguments and briefing by all interested parties, the Bankruptcy Court entered a Memorandum Opinion and Order denying the debtor's requested motion to modify the confirmed plan. A motion to reconsider was also filed by the debtor and thereafter denied by the Bankruptcy Court on March 6, 1989. Debtor now appeals the rulings of the Bankruptcy Court, particularly the refusal of that court to address the appropriateness of a modification pursuant to Code Section 1229, that as a matter of law no modification of the plan's payment provisions could ever occur due to the inclusion of the "drop-dead" clauses in the confirmed plan. More simply, the Bankruptcy Court held that because the plan contemplated the eventuality of default through the inclusion of the "drop-dead" clauses, no modification could occur.

## DISCUSSION

Jurisdiction for the instant appeal is proper in this Court pursuant to 28 U.S.C. § 158.

In an appeal from a ruling of the Bankruptcy Court, where pure questions of fact are concerned, the District Court will not overturn the Bankruptcy Court unless those rulings are found to be clearly erroneous or an abuse of discretion. However, where there are pure questions of law or mixed questions of law and fact, the District Court may conduct a *de novo* review. *See Matter of Evanston Motor Co., Inc.,* 735 F.2d 1029 (7th Cir.1986); *Wiesmueller v. Interstate Fire & Casualty Co.,* 568 F.2d 40 (7th Cir.1978); *Industrial Equipment Company v. Emerson,* 554 F.2d 276 (7th Cir.1977); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2588. In the present case, this Court is presented with an appeal concerning pure questions of law regarding the respective scope of Bankruptcy Code sections 1227 and 1229 properly subject to *de novo* review.

Section 1227 of the Code states as follows:

> (a) Except as provided in Section 1228(a) of this Title, the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1227(a).[1] Section 1229(a) of the Code provides as follows:

> (a) As soon as practicable after completion by the debtor of all payments under the plan,

---

1. Section 1228(a) of the Code, referred to in Section 1227(a), states as follows:

(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, on request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(i) increase or reduce the amount of payments claims of a particular class provided for by the plan;

(ii) extend or reduce the time for such payments; or

(iii) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1229(a).[2]

While appellant Mader spends considerable time arguing the issue of whether, sitting as a court of equity, the Bankruptcy Court below had some obligation to "prevent manifest injustice," this Court limits its present ruling to the legal issue of whether Code sections 1227 and 1229 are mutually exclusive.

There appears to be very little published law on this question as Chapter 12 is a relatively new legislative phenomena.[3] In addition, what published cases do exist are, for the most part, decisions from the various bankruptcy courts and, as such, are merely instructive for this Court and not binding. However, some discussion of the legislative history of Chapter 12 and the cases that do exist is warranted.

Chapter 12 of the Bankruptcy Code was passed in response to a financial crisis on America's family farms. When extreme economic difficulty was encountered, most farmers had too much debt to qualify for Chapter 13 relief and Chapter 11 was found to be "needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable." H.R.Rep. No. 99–958, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5246, 5249.[4]

The House Conference Committee's Report did not address any legislative history or commentary relating to the purposes or workings of section 1229. However, there is some discussion relating to section 1227.

---

other than payments to holders of allowed claims provided for under section 1222(b)(5) or 1222(b)(10) of this title, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan allowed under section 503 of this title or disallowed under section 502 of this title, except any debt—
    (1) provided for under section 1222(b)(5) or 1222(b)(10) of this title; or
    (2) of the kind specified in section 523(a) of this title.
11 U.S.C. § 1228(a).

2. Section 1229 also makes the provisions of 11 U.S.C. § 1222(a), 1222(b), 1223(c) and 1225(a) applicable to any modification of the plan pursuant to § 1229(a). Section 1229 also provides that the modified plan, when approved, becomes the confirmed plan. Lastly, section 1229 provides that the court, only for cause, may approve payments which expire after three years after the time the first payment under the original confirmed plan was due, and under no circumstances may the court approve payments which expire more than five years after the time the first payment was due.

3. Chapter 12 of the Bankruptcy Code was made effective by Pub.L. 99–554, Title II, § 255, 100 Stat. 3105 (October 27, 1986). In addition, the law has an automatic "sunset" clause repealing the law as of October 1, 1993. Pub.L. 99–554, Title III, § 302(f), 100 Stat. 3124 (October 27, 1986). Therefore, not only is the law of recent origin, it is of limited duration.

4. The House Conference Report also contained the following language:
    [T]his subtitle creates a new chapter of the Code—Chapter 12—to be used only by family farmers. It is designed to give family farmers facing bankruptcy a *fighting chance to reorganize* their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment.
    This new chapter is closely modeled after existing Chapter 13. At the same time, however, the new chapter alters those provisions that are inappropriate for family farmers—the requirement that the plan be filed within 15 days of the petitions; the requirement that plan payments start within 30 days of the plan confirmation; and the low debt limits found in Chapter 13.
    Under this new chapter, it will be easier for a family farmer to confirm a plan of reorganization.
H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess., 1986 U.S.Code Cong. & Admin.News 5246, 5249.

In that regard, the Conference Committee's Report stated the following:

> The Conferees are concerned that farmers be able to obtain post confirmation credit. The Conferees are in agreement that current law allows Chapter 13 debtors to do so. Because section 1227 is modeled after section 1327, family farmers may provide in their plans for post-confirmation financing secured by assets that have revested in the debtor. The debtor may also use revested property to the extent it is not encumbered by the plan or order of confirmation to secure post-confirmation credit.

H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess, 1986 U.S.Code Cong. & Admin.News 5246, 5251–52. This discussion relating to the family farmer's ability to obtain post-confirmation credit is the only legislative history available relating to either section 1227 or section 1229.

The first case in which this issue is directly addressed appears to be *In re Grogg Farms, Inc.*, 91 B.R. 482 (Bankr.N.D.Ind. 1988). In that case, similar to the facts before this Court, the confirmed plan included a "drop dead" clause. The default clause in *In re Grogg* provided as follows:

> Should the debtor at any time be more than thirty days in default in its obligations to Phoenix assumed in this plan, Phoenix shall have the right to an order lifting the automatic stay within ten days of service of said verified pleading.

*Id.* at 483. In *In re Grogg*, the bankruptcy court first discussed the participatory nature of bankruptcy proceedings. In that respect, the court noted that participatory proceedings often result in terms which neither the debtor nor the creditors would otherwise have had a legal right to impose upon the other party or a legal obligation to accept. The court stated that "[s]uch a plan is the product of the give and take of negotiations where each party, acting in its own self interest, attempts to maximize its return under a particular set of unfortunate circumstances." *Id.* at 484. Therefore, so long as the plan comports with the dictates of Code section 1225(a)(5), the plan can be confirmed. *Id.* at 485.

Next, the court discussed the "tension" between Code sections 1227 and 1229. The court recognized that section 1227 provides the confirmed plan not only with a binding effect on both debtors and creditors, *In re Winterfeldt*, 28 B.R. 486, 488 (Bankr.E.D. Wis.1983), the confirmed plan is also "res judicata as to those issues which could have and should have been raised prior to or in connection with confirmation." *In re Grogg*, 91 B.R. at 485 citing to *In re Evans*, 30 B.R. 530, 531 (9th Cir.B.A.P.1983); *In re Lewis*, 64 B.R. 415, 417 (Bankr.E.D. Penn.1986); *In re Lewis*, 8 B.R. 132, 137 (Bankr.D.Idaho 1981). While the court recognized the fact and necessity of some finality, the court also noted that flexibility was necessary to account for "[c]hanging fortunes and unexpected circumstances." *In re Grogg*, 91 B.R. at 485. The court then set out a framework within which a post-confirmation modification could be analyzed as follows:

> Post-confirmation modification is only warranted when an unanticipated change in circumstances affects the implementation of the plan as confirmed. The right or the opportunity to modify, thus, exists only in order to address unforeseen circumstances whose consequences are not provided for by the plan as originally written and confirmed. If the plan anticipates a particular event and addresses the rights and duties of the parties, should that event occur, there is no need to modify. Instead, one only needs to implement the contingency provisions contained in the original plan.

*Id.* at 485.

The court in *In re Grogg* concluded that because the confirmed plan specifically provided for relief for the creditor in the event of default in the form of a lifting of the automatic stay, no modification of the plan may be made by the court which would circumvent the provided-for remedy in the "drop dead" clause. This conclusion is apparently premised on the belief that the unforeseen circumstance relevant to the inquiry under section 1229 is the default itself. Because the default is itself the unforeseen circumstance, and default is provided for in the "drop dead" clause, no

modification can occur because it can never be said to be an unforeseen circumstance. *Id.* at 485–86.

In another early case, *In re Dittmer*, 82 B.R. 1019 (Bankr.D.N.D.1988), the bankruptcy court correctly noted that nothing in the Code itself mandates a showing by the debtor of some change in circumstances or unforeseen difficulties. The court points to the legislative history of Chapter 13, upon which Chapter 12 was modeled, in assessing whether there is any "changed circumstances" burden imposed upon the debtor.[5] The court concludes that

> the right to propose a modification bears no particular burden of proof, insofar as reasons are concerned, the modifications themselves do place upon the proponent a burden of proving the modifications comply with Chapter 12's provisions pertaining to plan content and confirmation as set out in sections 1222(a), (b), 1223(c) and 1225(a), to no less a degree than if originally proposed. *The nature of the circumstances giving rise to the need for modification and the degree by which they affect plan execution do not obviate this burden and consequently are immaterial to the issue of whether modification should be allowed except to the extent they impact upon the Debtors' continuing ability to fund a plan.*

*In re Dittmer*, 82 B.R. at 1021 (emphasis added). While the court in *In re Dittmer* did not allow modification, it did not do so because of the court's conclusion that the modified plan was incapable of being adequately funded based on the debtor's modified projections.

Taking the foregoing discussion of the legislative history and case law into consideration, this Court draws the following con-clusions. The debtor in this case is correct in arguing that the court in *In re Grogg Farms, Inc., supra,* missed the mark. While this Court agrees with most of the analysis laid out in that opinion, the final conclusion appears misplaced. The critical factor which is missing is the importance of the underlying reasons for the default, not the fact of default itself. If the fact of default itself was the only inquiry relevant to this case, the implication would be that no debtor who has a confirmed plan which addresses the eventuality of default could ever modify that confirmed plan. That conclusion appears to this Court unsupportable especially given the fact that the legislative history of section 1227 exclusively addresses the issue of the availability of post-confirmation credit to the family farmer. In addition, the legislative history of section 1327, the precursor of section 1227, explicitly cites a natural disaster as a potential reason for modification under that section.

Many of the other cases cited are easily distinguishable as they deal, for example, with whether, following a hearing, a determination by the bankruptcy and/or district court that a plan should or should not be modified was an abuse of discretion. This case has not even progressed to the stage where that question is presented.

It appears that these two Code sections cannot be read harmoniously and compatibly. Either a plan originally confirmed with a default provision can be modified pursuant to section 1229 or it can not be modified. While this Court does not hold that the present debtor's confirmed plan should be modified, nor do we hold that the modified plan presented to the bankruptcy court meets the requirements of section 1229, this Court does hold that, as a matter

---

**5.** The legislative history of section 1327 of the Code provides as follows:

> If a problem arises in the execution of the plan, the bill permits modification of the plan, either through a scaling down of payments, a temporary moratorium, or an extension of time for performance. *If the problems, such as a natural disaster, ...,* are severe enough that modification is impracticable, the debtor's inability to make further payments is due to circumstances for which he should not justly be held accountable, and if his creditors have already received at least what they would have if the debtor had opted for straight bankruptcy, then the court may terminate performance under the plan and grant the debtor his discharge notwithstanding incomplete performance.

*In re Dittmer*, 82 B.R. 1019, 1021 (Bankr.D.N.D. 1988) (emphasis added) quoting H.Rep. No. 595, 95th Cong., 1st Sess., pt. 1 at 125 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6086.

of law, the mere inclusion of a "drop dead" clause in the confirmed plan does not, *ipso facto*, preclude the possibility of modification under section 1229. No such preclusive effect appears contemplated by section 1227, and no such preclusive effect will be given here.

Therefore, to the extent the bankruptcy court held that as a matter of law no modification under section 1229 could occur, that ruling is reversed. The case is remanded to the bankruptcy court for further proceedings not inconsistent with this opinion.

### CONCLUSION

For the reasons set forth in the opinion above, this Court reverses the ruling of the bankruptcy court insofar as it precludes a hearing on the merits of debtor's modification petition. This Court rules that, as a matter of law, debtor is not precluded from seeking a modification from a confirmed plan under section 1229 for changed circumstances even when that confirmed plan includes default provisions. This case is remanded to the bankruptcy court for any further proceedings not inconsistent with this opinion.