United States Court of Appeals,

Fifth Circuit.

No. 95-40859.

In the Matter of Josephine M. MENDOZA, also known as Josie Mendoza, Debtor.

Josephine M. MENDOZA, also known as Josie Mendoza, Appellant,

v.

TEMPLE-INLAND MORTGAGE CORPORATION, Appellee.

May 12, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before SMITH and PARKER, Circuit Judges, and JUSTICE[*], District Judge.

ROBERT M. PARKER, Circuit Judge:

The Appellant, Josephine M. Mendoza ("Mendoza"), appeals an order of the bankruptcy court which required her to make post-petition mortgage payments which were in arrears directly to Temple-Inland Mortgage Corporation ("Temple") rather than modifying her Chapter 13 Plan to allow her to make the past due postpetition mortgage payments through the Chapter 13 Trustee, and by including a "drop dead" clause in its order. The district court affirmed. Finding that the bankruptcy court erred, we reverse and remand.

FACTUAL HISTORY

Josephine Mendoza filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code on October 5, 1994. Among Mendoza's liabilities was a debt of $3,276.94 owed to Temple secured by a mortgage on her home and fixtures (a range and hood). Mendoza's home was worth approximately $45,000. Mendoza's Chapter 13 Plan of Reorganization provided for the payment of the current mortgage, the prepetition arrearage on the mortgage, and the Trustee's fee on a monthly basis to be disbursed by the Trustee. Under Mendoza's Plan, she would pay off Temple completely. On January 9, 1995, the Bankruptcy Court confirmed Mendoza's Plan which provided for thirty-nine (39) monthly Plan payments.

[*]District Judge of the Eastern District of Texas, sitting by designation.

Soon after Mendoza filed her petition for bankruptcy, she lost her job, suffered an illness, and thus was unable to make payments for two months (December 1994 and January 1995) under her proposed Plan resulting in a postpetition arrearage on her mortgage. Since then, Mendoza has been able to make her monthly payments as prescribed by the Plan.

Within one month of confirmation of Mendoza's Plan, Temple filed a motion for relief from stay under Bankruptcy Code § 362(d)(1) apparently seeking to have Mendoza make payments on the postpetition arrearage directly to Temple rather than through the Trustee.[1] On March 7, 1995, Mendoza filed her motion to modify Chapter 13 Plan to include the postpetition arrearage on her home mortgage in the Plan, to extend the number of Plan payments from 39 to 43 monthly payments which would allow her to pay off the arrearage, and to continue to make her Plan payments through the Trustee rather than directly to Temple.

On March 20, 1995, the bankruptcy court held a hearing on Temple's motion for relief from stay. During the hearing, the bankruptcy court emphasized that it had no authority to modify Mendoza's Plan to include the postpetition arrearage, but instead indicated that it would grant the relief Temple had requested. On March 29, Mendoza filed a motion to reconsider whether the Plan could be modified to include the payment of the postpetition arrearage. Thereafter, on April 13, the bankruptcy court entered an "Order Conditionally Modifying Stays" requiring Mendoza to make payments on the postpetition arrearage directly to Temple over a six-month period, and included a "drop dead" clause which Temple had requested. The district court affirmed the decision of the bankruptcy court on September 29, 1995. This appeal followed.

On appeal, Mendoza asserts that the bankruptcy court abused its discretion by refusing to modify her Chapter 13 Plan to allow her to make the postpetition mortgage payments which were in arrears through the Chapter 13 Trustee and instead requiring her to make the postpetition mortgage payments directly to Temple, and the court further erred by including the "drop dead" clause.

## DISCUSSION

---

[1]Temple's motion for relief from stay alternatively sought that the stay be terminated as to Mendoza's home in order to allow Temple to foreclose its security interest.

This Court, acting as a second review court, reviews the bankruptcy court's findings of fact under the clearly erroneous standard, but the bankruptcy court's and district court's conclusions of law are reviewed *de novo. In re United States Abatement Corp.,* 79 F.3d 393, 397 (5th Cir.1996). The bankruptcy court's decision to lift the automatic stay is reviewed for an abuse of discretion. *See In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1026 (11th Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).

A court may abuse its discretion by erroneously concluding that the law does not afford it the discretion to do something. *See Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 535 (5th Cir.1996). Similarly, when a court makes a discretionary decision but erroneously believes that the law limits its discretion in a certain way (i.e., an incorrect understanding of the law), then it abuses its discretion. Thus, where a court's exercise of discretion is premised on an erroneous conclusion of the law, that constitutes an abuse of discretion in that the court failed to understand the full bounds of its discretion.

Initially, we consider Mendoza's argument that the district court erred in reviewing the bankruptcy court's order solely for abuse of discretion rather than considering whether its decision was based on a erroneous conclusion of law. Because this Court has not decided the issue of whether modification of a debtor's Chapter 13 plan to include postpetition arrearages is provided for under the Bankruptcy Code, which is a question of law, we find that the district court erred by applying the abuse of discretion standard in its review with respect to this issue.

*A. Plan Modification & Direct Payment*

The issue we first address on appeal raises a question of law: whether the bankruptcy court has the authority to modify a Chapter 13 plan to allow a debtor to include postpetition arrearages with respect to a secured claim on the debtor's home in her Chapter 13 Plan.[2] The bankruptcy court refused to modify Mendoza's Chapter 13 Plan to include postpetition arrearages on her home

---

[2]Under Bankruptcy Code § 1329, the debtor may modify a Chapter 13 plan at any time after it is confirmed, provided that the plan, as modified, conforms to the requirements of §§ 1322(a) and (b), and 1325(a). Thus, because § 1329 states that the requirements of § 1322(b) must be complied with, our analysis focuses on § 1322(b)(5).

mortgage based on the belief that it did not have the authority to *modify* her Plan to include postpetition mortgage payments in arrears in a Chapter 13 plan. The bankruptcy court stated that since such arrearage payments were not "provided for" in the Bankruptcy Code, it was without authority to make the requested modification. The bankruptcy court also ordered Mendoza to make direct payment of the postpetition mortgage arrearage and each of her monthly mortgage payments beginning with the May 1995 installment.

Mendoza primarily argues that the bankruptcy court erred by concluding that it did not have the capacity to modify a plan of reorganization to provide for the payment of postpetition mortgage payments in arrears, and by requiring her to make direct payments to Temple. Mendoza asserts that there is authority to allow plan modification to include postpetition arrearage in the debtor's Chapter 13 plan. *See In re Stafford,* 123 B.R. 415 (N.D.Ala.1991). Additionally, Mendoza contends that all payments must be made under a plan of reorganization, based on a narrow reading of § 1326(c), and that the Chapter 13 trustee is charged with disbursing all monies to creditors. Similarly, Mendoza argues that arrearage payments should be distributed by the trustee based on § 1326(c). *See, e.g., In re Reid,* 179 B.R. 504, 507 (E.D.Tex.1995), *aff'd,* 77 F.3d 473 (5th Cir.1995) (stating that the general rule requires that debts provided for in a Chapter 13 plan be paid through the trustee).

Temple contends that pursuant to Bankruptcy Code section 1322(b)(2), a Chapter 13 plan may modify "the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's residence...." Temple relies on the "other than" language of § 1322(b)(2) and the United States Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) as precluding modification of Mendoza's Plan to include the post-petition arrearages.[3]

---

[3]We note a split of authority, post-*Nobelman,* regarding modification of a mortgagee's rights where the mortgagee has a security interest not only in the debtor's principal residence, but also in "additional security". *Compare, In re Johns,* 165 B.R. 405 (E.D.Pa.1994), *aff'd,* 37 F.3d 1021 (3rd Cir.1994) (Chapter 13 plan could modify residential mortgagee's rights where mortgagee's interest was secured by other collateral including "alterations, additions, improvements, appliances, machinery, furniture and equipment"); *In re Hammond,* 27 F.3d 52 (3rd Cir.1994) (mortgage that created security interest in debtor's personal property in addition to lien on debtor's principal residence could be bifurcated) *with, In re Halperin,* 170 B.R. 500 (Bankr.D.Conn.1994) (residential mortgagee's security interest which extended to rents, royalties,

However, *Nobelman* precludes modification of the mortgagee's "*rights*" which are "reflected in the relevant mortgage instrument[ ]...." *Nobelman,* 508 U.S. at 329, 113 S.Ct. at 2110 (emphasis added). These rights may include, for example: (1) the right to repayment of the principal in monthly installments over a fixed term at a specified interest rate, (2) the right to retain the lien until the debt is paid off, (3) the right to accelerate the loan upon default and to proceed to foreclosure and recover any resulting deficiency. *Id.* We find Temple's reliance on *Nobelman* misplaced under the facts of this case. In the case *sub judice,* Mendoza is not attempting to modify the "rights" of the mortgagee (Temple), but instead, solely seeks to modify her Chapter 13 Plan to include the post-petition mortgage arrearage while observing the "bargained for" terms of her mortgage. There is a distinction between modifying the rights of a mortgagee where the debtor proposes to pay his mortgage at an interest rate lower than that provided for in the mortgage, and modifying a plan of reorganization to include postpetition mortgage payments which are in arrears. Accordingly, Temple's rights as a mortgagee and its security interest are not considered "modified" under our reading of *Nobelman.*

Although we have not decided the question of whether a bankruptcy court may modify a confirmed plan of reorganization to include postpetition mortgage payments in arrears, we note there is a split of authority as to whether a debtor may cure such defaults through modification.[4] Though not controlling, we find the analysis of the Eleventh Circuit's decision in *In re Hoggle,* 12 F.3d 1008 (11th Cir.1994) to be better reasoned and persuasive in holding that a Chapter 13 Plan may be modified to cure postpetition defaults through a plan of reorganization.

In *Hoggle,* the debtors filed for bankruptcy under Chapter 13 of the Bankruptcy Code and were past due on their mortgage payments. The debtors' plan, pursuant to § 1322(b)(5), included a provision to cure the past due payments. The bankruptcy court confirmed the debtors' plan, after

---

oil and gas rights, profit, stock and fixtures did not remove mortgage from protection of § 1322(b)(2)); *In re Harris,* 167 B.R. 813 (Bankr.D.S.C.1994) (same); *In re Hirsch,* 166 B.R. 248 (E.D.Pa.1994) (same).

[4]Those cases allowing modification include *In re Hoggle,* 12 F.3d 1008 (11th Cir.1994); *In re Davis,* 110 B.R. 834 (Bankr.W.D.Tenn.1989); *In re Gadlen,* 110 B.R. 341 (Bankr.W.D.Tenn.1990); *In re Ford,* 84 B.R. 40 (Bankr.E.D.Pa.1988); *In re McCollum,* 76 B.R. 797 (Bankr.D.Or.1987). Those cases disallowing modification include *In re Nicholson,* 70 B.R. 398 (Bankr.D.Colo.1987).

which the debtors failed to make their required payment. The bankruptcy court, in denying the secured creditor's motion to lift stay, modified the debtors' Chapter 13 plan to provide for the cure of the postconfirmation arrearages. The Eleventh Circuit held that the bankruptcy court had the authority to modify a confirmed Chapter 13 plan to allow the debtor to cure by including the postconfirmation arrearages in the debtors' modified Chapter 13 plan. *Id.* at 1009. The *Hoggle* court concluded that § 1322(b)(5) expressly authorized a plan of reorganization to provide for the curing of *any* default with the postconfirmation arrearages to be paid under a modified plan, notwithstanding § 1322(b)(2)'s anti-modification language. *Id.* at 1010. The court's focus on the plain meaning of § 1322(b)(5), the legislative history and intent, and Chapter 13's overall policy of affording flexible repayment plans, compelled the conclusion that §§ 1322(b)(5) "permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan." *Id.*

Conversely, however, several courts have held that § 1322(b)(5) precludes a debtor from modifying a Chapter 13 plan to include an arrearage. *See In re Nicholson,* 70 B.R. 398 (Bankr.D.Colo.1987). In *Nicholson,* the bankruptcy court asserted that § 1322(b)(2) & (5) do not allow a Chapter 13 plan to modify the rights of a creditor holding a claim secured only by a mortgage on the debtor's principal residence except to cure *prepetition* defaults within a reasonable time." *Nicholson,* 70 B.R. at 401 (emphasis added). Although the *Nicholson* court states that § 1322(b)(2) & (5) expressly provide that only prepetition mortgages may be cured in a plan, we find that neither section distinguishes expressly or otherwise between prepetition and postpetition arrearages. Accordingly, we do not follow this constricted reading of § 1322(b)(2) & (5).

Thus, turning to the case *sub judice,* we are compelled to hold, as has our sister circuit, that pursuant to § 1322(b)(5), bankruptcy courts are empowered to modify a debtor's plan to include postpetition arrearages arising from a secured loan, such as a mortgage. Therefore, the bankruptcy court in this case erred as a matter of law by holding that it did not have the authority to modify Mendoza's Plan.

We conclude that, under a plain meaning reading of § 1322(b)(5), the legislative intent, and the underlying policy of Chapter 13, these grounds mandate the conclusion that a debtor's plan may

be modified to include postpetition mortgage payments in arrears. Moreover, the Bankruptcy Reform Act of 1994 amended § 1322(c) to provide that "a default with respect to ... the debtor's principal residence may be cured ..." and that "the plan may provide for the payment of the claim *as modified*...." 11 U.S.C. § 1322(c) (emphasis added). Although this new subsection is not effective to the case before the Court as the Act does not apply to cases filed before October 22, 1994, the amendment is illustrative of Congress' intention to provide homeowners with continuing rights to cure defaults and preserve their primary asset. However, to preserve the Bankruptcy Code's balance of protections, we further conclude that the modification must comply with the requirements of § 1322(b)(5) and that the bankruptcy court should inquire whether the proposed modification comports with § 1322(b)(5)'s requirement that such a cure be effected within a reasonable time and simultaneously maintain current payments on any long term secured loan. *See Hoggle,* 12 F.3d at 1012.

Finally, we hold that the bankruptcy court's decision whether to modify a Chapter 13 plan of reorganization is to be reviewed under the abuse of discretion standard. *See In re Witkowski,* 16 F.3d 739, 746 (7th Cir.1994).

Regarding whether the bankruptcy court erred in ordering Mendoza to make her mortgage payments (those in arrears and coming due starting May 1995) directly to Temple instead of through the Trustee, we find Mendoza's argument to be unpersuasive. This court previously held in *In re Foster,* 670 F.2d 478 (5th Cir.1982) that although § 1326(c) states the general rule that payments are to be made through the trustee, Chapter 13 permits the debtor to act as the disbursing agent and to make payments to a creditor directly. *Id.* at 486. Further, we determined that "the provisions of Chapter 13 make it clear that the designation of the debtor as [the] disbursing agent is very much a matter left to the considered discretion of the bankruptcy court." *Id.* Although some courts have drawn a distinction between direct payment of current mortgage payments and arrearage payments, *see, e.g., In re Aberegg,* 961 F.2d 1307, 1310 n. 3 (7th Cir.1992), we believe that the bankruptcy court is in the better position to ascertain whether or not the debtor is capable of acting as a disbursing agent and make direct payments of either current mortgage payments or arrearage

payments. The only limitation is that the bankruptcy court in making this determination "must determine whether the debtor will be able to make those payments and ... comply with the plan." *Id.* Therefore, we recommend that the bankruptcy court carefully consider its ruling that Mendoza make direct payments to Temple in light of her past problems.

*B. Drop-Dead Clauses*

The bankruptcy court in its April 13, 1995 "Order Conditionally Modifying Stays" included a "drop dead" clause over the objection of Mendoza.[5] A "drop dead" clause "allows a creditor to exercise its state law remedies upon default of a debtor under a plan without seeking *further* permission from the bankruptcy court." *In re Kennedy,* 177 B.R. 967, 975 (Bankr.S.D.Ala.1995) (emphasis added).

Mendoza asserts that the bankruptcy court erred by including the "drop dead" clause in the order since the Bankruptcy Code does not allow a court to impose "drop dead" clauses over the debtor's objection. Temple contends that such provisions are not uncommon where the automatic lifting of the stay is conditioned on the debtor's failure to make timely payments, coupled with notice and an opportunity to cure. Alternatively, Mendoza contends that the bankruptcy court abused its discretion by including the clause on the basis that the clause is inconsistent with the goals of the Bankruptcy Code.

Mendoza relies on the language in *Kennedy* that "if the parties don't agree [to a drop dead provision], both are left to their statutory remedies." *Id.,* 177 B.R. at 975. In addition, the bankruptcy court in *Kennedy* stated that no section of the Bankruptcy Code requires such relief to be given a secured creditor by a debtor. *Id.* However, *Kennedy* involved a secured creditor's objection to confirmation of a proposed Chapter 13 plan where the plan itself did not include a "drop dead" clause in the event of default by the debtors. We find Mendoza's reliance on *Kennedy*

---

[5]We do not, however, decide today the question of whether a confirmed plan of reorganization can be modified where the plan itself includes a "drop dead" clause. *Compare, In re Grogg Farms, Inc.,* 91 B.R. 482, 484-85 (Bankr.N.D.Ind.1988) (Court will not permit plan to be modified to avoid consequences of a drop dead clause over the objection of the affected creditor) *with, In re Mader,* 108 B.R. 643, 647-48 (N.D.Ill.1989) (Mere inclusion of a drop dead clause in a plan does not, ipso facto, preclude the possibility of later modification). We leave that question for another day.

misplaced. We do not consider Mendoza's strict reading of *Kennedy* as precluding the bankruptcy court from including "drop dead" clauses in its orders, whether by agreement of the parties or *sua sponte* without the parties' agreement.

Moreover, a natural reading of Bankruptcy Code § 362 does not preclude the inclusion of "drop dead" clauses in the bankruptcy court's order to modify the stay. *See e.g. United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (employing a plain meaning reading of Bankruptcy Code § 506(b)). Because of the equitable nature of bankruptcy in seeking a balance between debtors and creditors, bankruptcy courts should be afforded the latitude to fashion remedies they consider appropriate under the circumstances, including "drop dead" orders, as long as the bankruptcy court follows the Bankruptcy Code's statutory mandate. As a discretionary decision, the bankruptcy court's inclusion of a "drop dead" clause must be reviewed under the abuse of discretion standard. *See, e.g., In re Standfield,* 152 B.R. 528, 540 (Bankr.N.D.Ill.1993) (citing *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982)). Based on our review of the record, we conclude that the bankruptcy court did not abuse its discretion by including the "drop dead" clause in its order "Conditionally Modifying Stays." We find Mendoza's other arguments precluding "drop dead" clauses to be without merit.

## CONCLUSION

Having concluded that the language of § 1322(b)(5) allows for the modification of a Chapter 13 plan of reorganization to include postpetition past due mortgage payments, we reverse and remand to the district court and direct the district court to remand to the bankruptcy court with directions that the bankruptcy court consider the foregoing discussion in its determination of whether to modify Mendoza's Plan to include the postpetition mortgage payments in arrears and whether to order her to make direct payments to Temple.

REVERSED AND REMANDED.

JUSTICE, District Judge, concurring in part and dissenting in part:

I find that it was an abuse of discretion for the bankruptcy court to include a "drop dead" clause in its April 13, 1995, Order Conditionally Modifying Stays, and for this reason only, I

respectfully dissent from the majority opinion.

As the majority summarizes, Josephine Mendoza's Chapter 13 Plan of Reorganization provided for the payment of the current mortgage on her residence, the pre-petition six-month arrearage on the mortgage, and a trustee's fee. Mendoza, as a result of an illness, was forced to miss work and was eventually dismissed from her job, causing her to miss two of her monthly payments under the Reorganization Plan. Consequently, Temple, the creditor, filed a motion for relief from stay under section 362(d)(1) of the Bankruptcy Code. The bankruptcy court thereupon ordered that Mendoza pay off the post-petition arrearage on her mortgage over a six-month period. The court included a drop-dead clause in its order, which provided that Temple, upon default by Mendoza, could foreclose on her residence after providing her notice without seeking the bankruptcy court's approval.

When a debtor files for protection under Chapter 13 of the Bankruptcy Code, section 362(a) provides for an automatic stay of most actions against the debtor's property. The automatic stay provision, a "key component of federal bankruptcy law," *In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1146 (5th Cir.1987), "is one of the fundamental debtor protections provided by the bankruptcy laws," *id.* (quoting H.R.Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296). The automatic stay provision precludes any recourse to state law remedies in a Chapter 13 case until the debtor is discharged, which usually occurs when the debtor has completed all payments under her reorganization plan. *See* 11 U.S.C.A. §§ 362(a), (c)(2). By allowing a creditor to foreclose on the debtor's property without permission from the court, a "drop-dead" clause constitutes a modification and conditioning of a stay.

While the inclusion of a drop-dead clause is permitted under the Bankruptcy Code, as a modification of an automatic stay, the following conditions must first be established:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property;  and
>>
>> (B) such property is not necessary to an effective reorganization....

11 U.S.C.A. § 362(d). Subsection two, which requires that the debtor lack equity in her property, is inapplicable to the case at hand, because Mendoza has equity in her residence. Therefore, the bankruptcy court's decision to include a drop dead clause should be analyzed for abuse of discretion pursuant to the "for cause" exception in § 362(d)(1).

The Bankruptcy Act does not specify what constitutes cause to modify a stay, other than "lack of adequate protection of an interest in property of such party in interest." The legislative history, however, provides some guidance:

> The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause.... [A] desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. *The facts of each request will determine whether relief is appropriate under the circumstances.*

H.R.Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6300 (emphasis added). The vast majority of courts that have construed the "for cause" provision of section 362(d) have found that a debtor's failure to make payments to the creditor, in violation of her reorganization plan, can constitute cause to modify a stay. Yet, failure to make post-petition payments does not *ipso facto* establish cause for relief. *In re Raymond,* 99 B.R. 819, 822 (Bankr.S.D.Ohio 1989). Rather, in accordance with the legislative history, before modifying a stay, a court should first weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default. *In re McCollum,* 76 B.R. 797, 799 (Bankr.D.Or.1987) ("A postpetition default may, or may not, constitute "cause' for relief from stay."); *In re Davis,* 11 B.R. 680, 681 (Bankr.E.D.Pa.1981) ("[W]here debtors' delay in beginning [plan] payments is excusable, that failure alone is not sufficient "cause' for lifting the stay.").

The following factors are relevant in Mendoza's case in determining whether her failure to make payments constitutes cause: (1) the amount of post-arrearage debt, (2) the number of payments

missed,[1] (3) the reason for the default, (4) whether adequate protection exists to cover the missed payments,[2] and (5) the type of property subject to the modification of the stay. Together, these factors support the finding that there was no cause to modify the automatic stay protecting Mendoza's residence.

Mendoza's post-arrearage debt was minimal. Her total debt owed to Temple was $3,276.94. As a result of missing two monthly payments, her post-arrearage debt was $684. She missed her payments for only two months, not out of neglect or bad faith, but because she was sick and because, as a result, was terminated from her employment. Her sickness and termination from employment was not something she could predict at the time she entered into her plan of reorganization. Further, more than adequate protection existed to cover her debts. "[I]n determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's "equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims." *In re Indian Palms Assoc., Ltd.,* 61 F.3d 197, 207 (3rd Cir.1995). Mendoza's equity in the property—more than $40,000—is substantial, and Mendoza's equity cushion was in excess of one thousand percent. "Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection." *In re Kost,* 102 B.R. 829, 831

---

[1]Most courts require a "substantial default in performance" of the terms of a plan before finding cause to lift or modify a stay, examining both the amount of the post-arrearage debt and the number of payments missed. *See, e.g., In re Smith,* 104 B.R. 695, 700 (Bankr.E.D.Pa.1989) ("The only real issue before the court in a post-confirmation motion for relief from the automatic stay is whether the debtor has substantially complied with the terms of the confirmed plans.") (citing to numerous cases on this issue); *In re Durben,* 70 B.R. 14, 16 (Bankr.S.D.Ohio 1986) (stay not lifted because no material default); *In re Graves,* 59 B.R. 928, 929 (Bankr.E.D.Pa.1986) (cause existed where the debtor completely failed to make payments over a period of three years); *In re Shahid,* 27 B.R. 673, 674-75 (Bankr.S.D.Ohio 1982) (cause existed where debtor accumulated "formidable" arrearage by failing to make any post-confirmation payments); *In re Davis,* 11 B.R. 680, 682 (Bankr.E.D.Pa.1981) (refusing to lift stay given short period of time during which payments were skipped).

[2]*In re Morysville Body Works, Inc.,* 86 B.R. 51, 57 (Bankr.E.D.Pa.1988) (size of equitable cushion is one factor a court must weigh); *In re McCollum,* 76 B.R. 797, 799 (Bankr.D.Or.1987) ("[W]hen a creditor is adequately protected by a large equity cushion and the debtor could suffer a substantial loss in the event of foreclosure, it does not appear that relief from stay should automatically follow a default in payment.").

(Bankr.D.Wyo.1989) (citations omitted).[3]  Finally, the fact that it is Mendoza's residence that is the subject of the drop dead provision weighs in her favor.

Balancing the equities through application of the above factors, I find that the imposition of a drop-dead clause is too harsh a remedy given the specific circumstances of Mendoza's case. Mendoza, through no will of her own, was placed in a hard situation at a hard time.  The payments missed were slight, and creditor Temple remained adequately protected.  The majority appears to be heading in the direction of creating a *per se* rule that whenever there is a post-petition default, the bankruptcy court may impose a drop dead requirement on the debtor.  The protections provided by the automatic stay provision of section 362 should not be so readily eviscerated.  Consequently, I find that the bankruptcy court abused its discretion in deciding that it had cause to include a drop dead clause in its Order Conditionally Modifying Stays.

---

[3]While the amount of equity in the property is the primary factor that courts look to in an adequate protection analysis, other factors include the following:  the value of the collateral, which was considerable in this case, the likelihood that the collateral will depreciate or appreciate over time, whether insurance coverage is inadequate, whether property taxes are being paid, and the prospects for successful reorganization of the debtor's affairs. *See, e.g., In re Briggs Transp. Co.,* 780 F.2d 1339, 1349 (8th Cir.1985); *In re Aqua Assoc.,* 123 B.R. 192, 196-97 (Bankr.E.D.Pa.1991).  Given the incomplete state of the record regarding the latter four of these factors, they have not been considered in this analysis.