In re Arthur James KENNEDY and Lula Dee Kennedy, Debtors.

Bankruptcy No. 94–11752–MAM–13.

United States Bankruptcy Court, S.D. Alabama.

Jan. 26, 1995.

Herman D. Padgett, Mobile, AL, for debtors.

Franklin Anderson, Mobile, AL, for Pearl Finance Co.

## *ORDER*

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter is before the Court on Mr. and Mrs. Kennedy's ("Kennedys" or "Debtors") request for confirmation of their Chapter 13 plan. Pearl Finance Co. n/k/a Carmel Investments, Inc. ("Pearl" or "Pearl Finance") objects. This is a matter over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). For the reasons given below, the plan, if modified as indicated, will be confirmed.

## *FACTS*

The Debtors filed for Chapter 13 relief on August 29, 1994. They had purchased a 1987 Mercury Marquis with financing through Pearl on June 3, 1994. The Kennedys bought the car for $3,500 and made a $500 down payment. The Kennedys' loan from Pearl was for $3,708.06. The $3,708.06 represents the $3,000 the Kennedys needed plus a $708.06 finance charge. The interest rate for the 17 month loan was 27.9%. The payments were $206.06 per month from July 3, 1994 through December 3, 1995.

Mrs. Kennedy testified that the automobile, at the time of the hearing—January 12, 1995—was worth $2,500. Since Debtors purchased the car, it has had transmission problems; it can't be shifted out of second gear. It is driveable, but it must be driven slowly.

The car also has a broken headlight. These changes in condition have occurred since the purchase.

A Pearl representative, Ms. Smith, testified that the value of the automobile, on August 29, 1994, the date the Chapter 13 was filed, was $4,250. This value was the retail "Blue Book" value on that date.[1] She stated the wholesale value was $2,750 but she believed retail was the proper value to use. She inspected the car on December 23, 1994 and found holes in the dash, fair tires, a blinker not functioning, and a dulling and fading paint job. She heard Mrs. Kennedy's testimony about the transmission. Considering these deficiencies, "as is," the vehicle at confirmation was worth $800—$1,200 to Pearl if sold in a quick sale according to Ms. Smith. She indicated that $900 in repairs would be needed to recondition the car.

Pearl's agent testified that according to their financing standards a 1987 automobile cannot be used as collateral after September 1996. The vehicle has no marketability or resale at that point. Pearl normally disposes of vehicles at auction sales and would likely dispose of the Kennedy vehicle in this manner.

The amount owed Pearl on August 29, 1994 was $2,816.72. Pearl has incurred $350 in attorneys fees in this bankruptcy case. The interest Pearl would incur at 27.9% over the 22 months of useful life in the car that Pearl believes is left is approximately $800.

Pearl filed a timely proof of claim on January 17, 1995 stating it had a secured claim of $3,980.00.

### PROCEDURAL HISTORY

Debtors filed their Chapter 13 case and plan on August 29, 1994. The plan proposed to pay Pearl Finance a $100 per month pref-

erence payment for as long as necessary (up to five years) on its claim secured by Debtor's automobile, the 1987 Mercury Marquis. The unsecured claim of Pearl (and all other unsecured claims) were to be paid 1% of their balance. Pearl objected to this plan on numerous grounds.

Debtors filed an amended Chapter 13 plan on November 28, 1994 which proposed to pay Pearl $150 per month. Unsecured claims were to receive 5% of their balance. Pearl again objected and Debtor again amended the plan on January 12, 1995.

In the second amended plan, Pearl was still offered $150 per month on its secured claim; however, all unsecured claims, including Pearl's, were to be paid 58.34% over the five year period. Pearl continued to press its objection.

The objection states that the Kennedys' plan fails to adequately protect Pearl's secured claim pursuant to 11 U.S.C. § 361. This failure of adequate protection results from (1) an improperly low valuation of the auto securing Pearl's claim; (2) failure of the plan to recognize the rapid depreciation rate of the automobile; (3) failure to provide that Pearl retains its lien; (4) failure to require maintenance of insurance; (5) failure to provide for creditor remedies in the event of default without court order; and (6) failure to provide interest and attorneys fees on its secured claim.

### LAW

#### I.

Pearl made a series of objections to the plan which the Court will address, but underlying the objections is an issue about which Pearl and the Debtor are in complete disagreement. The issue is "When is the

---

1. The N.A.D.A. Official Used Car Guide or "Blue Book" is used to determine values by many lenders.

   The Blue Book, per the Publisher's Notes, "assumes a vehicle is clean. Appropriate deductions should be made for reconditioning costs." The Blue Book also defines "Av'g Retail" value as "latest average retail values based on actual sales reports from new and used car dealers." "Av'g Trade or Wholesale" value is "latest average wholesale values based on auction reports and dealer wholesale reports throughout the region."

collateral securing a claim valued for purposes of confirmation of a Chapter 13 plan—at the date of the filing of the case or at the confirmation hearing?" Surprisingly, the case law on this issue is divided. There are three different theories espoused by the cases: (1) the date of filing theory or *In re Beard,* 108 B.R. 322 (Bankr.N.D.Ala.1989), theory; (2) the effective date of the plan or *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y. 1981), theory; and (3) the date of confirmation or *General Motors Acceptance Corp. v. Johnson (In re Johnson),* 145 B.R. 108 (Bankr.S.D.Ga.1992), theory.[2] The *Johnson,* or date of confirmation theory, provides the only complete answer to this issue. The other two theories are too narrowly focused or incorrectly read the plain language of 11 U.S.C. § 1325(a)(5)(B).

The *Beard* theory or date of filing theory is followed by several cases. *Johnson v. General Motors Acceptance Corp. (In re Johnson),* 165 B.R. 524 (S.D.Ga.1994); *In re Stafford,* 24 B.R. 840 (Bankr.D.Kan.1982); *Chrysler Credit Corp. v. Van Nort (In re Van Nort),* 9 B.R. 218 (Bankr.E.D.Mich. 1981); *In re Adams,* 2 B.R. 313 (Bankr. M.D.Fla.1980). These cases start their reasoning (to the extent they provide any) at Section 502(b). It states that if a claim is filed by a creditor, and if the debtor objects, the court "shall determine the amount of such claim ... as of the date of the filing of the petition ..." The reasoning then proceeds to Section 506(a) which states "an allowed claim of a creditor secured by a lien on property ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..." Reading these two portions of 502 and 506 together, the judges conclude that the

amount of a claim that is secured is determined once and for all at case filing. Under Section 1325(a)(5)(B), a Chapter 13 plan shall be confirmed if holders of "allowed secured claims" (1) "retain the lien securing such claim" and (2) "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ..." Therefore, a plan must pay the "allowed secured claim" as that claim is determined under Section 502(b) and 506. Also, the *Beard* theory raises a constitutional issue. The amount of a claim must be determined at filing; to do otherwise, the *Beard* theory contends, would constitute a taking for public use (bankruptcy law) without compensation which would violate the Fifth Amendment to the United States Constitution.[3]

The *Klein* case, or effective date theory, holds that the language of Section 1325(a)(5)(B)(ii) is clear as to the proper valuation date. Section 1325(a)(5)(B) says, "as of the effective date of the plan."[4] *In re Owens,* 120 B.R. 487 (Bankr.E.D.Ark.1990); *Beneficial Homeowners Serv. Corp. v. Moreau (In re Moreau),* 135 B.R. 209 (N.D.N.Y. 1992); *In re Fulcher,* 15 B.R. 446 (Bankr. D.Kan.1981); *In re Strong,* 12 B.R. 221 (Bankr.W.D.Tenn.1981). .

The *Johnson* view, or date of confirmation theory, says the issue is one which must take into account a variety of bankruptcy code sections and purposes to arrive at the correct result. It is the majority view. *In re Cook,* 38 B.R. 870 (Bankr.D.Utah 1984). *Arnette v. General Motors Acceptance Corp. (In re Arnette),* 156 B.R. 366 (Bankr.D.Conn.1993); *In re Jablonski,* 88 B.R. 652 (E.D.Pa.1988); *In*

---

**2.** The *Johnson* case is the bankruptcy court decision on these issues. The bankruptcy court ruling was overturned on appeal by the district court in *In re Johnson,* 165 B.R. 524 (S.D.Ga. 1994). The bankruptcy court decision in *Johnson* is used to represent the date of confirmation theory because it analyzes the law as to this issue very well.

**3.** The Fifth Amendment to the United States Constitution states: "[P]rivate property [shall not] be

taken for public use, without just compensation." U.S.C.A. Const. Amend. 5.

**4.** Section 1325(a)(5)(B)(ii) states in full: "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

*re Jones,* 5 B.R. 736 (Bankr.E.D.Va.1980).[5] These cases start their reasoning at the same Code section as the *Beard* cases. Section 502(b) is explicit. Claims are to be allowed as of the date of the filing of a debtor's bankruptcy petition. All creditors' claims against a debtor must be fixed as of that date. However, if a creditor holds security for a debt, his total claim may be composed of one or two parts—secured and/or unsecured. When a court determines the split between the secured and unsecured parts of a creditor's total claim is where the *Johnson* and *Beard* analyses diverge. According to *Beard,* that determination is made once—as of the case filing. According to *Johnson,* the amount of the entire claim against the debtor is fixed as of the filing of the petition; the value of the security and thus the amount of the claim which is secured may change throughout the case. The *Johnson* analysis contends that Section 506 makes this clear.

■ Section 506 entitled "Determination of secured status" tells courts exactly that— how and when to determine the amount of a claim that is secured and/or unsecured. It is clear from Section 506(a) that although the total claim amount may be allowed at filing and the validity of the security interest declared, how much of a total claim is actually a secured claim at any point during a bankruptcy case may fluctuate. The second sentence of Section 506(a) would be superfluous if this were not true. Section 506(a) states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditors in the estate's interest in such property.... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property and in conjunction with any hearing on

such disposition or use or on a plan affecting such creditor's interest.

Thus, the amount of a creditor's claim will not vary but the proportion of secured to unsecured may vary during the case.

■ The *Johnson* theory is the only one which allows the claim allowance process and the Chapter 5 Bankruptcy Code sections to peacefully coexist with the adequate protection process and the Chapter 3 Bankruptcy Code sections. Statutory construction requires courts to construe statutes in a way which gives meaning to all parts if possible. *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *In re Rufener Constr. Co.,* 1993 WL 165331, *2, 1993 U.S.Dist. LEXIS 6428, *7 (N.D.Cal. 1993). "[S]tatutes for the same subject matter, although in apparent conflict, are construed to be in harmony if reasonably possible. Accordingly, when two statutes are capable of co-existence, it is the duty of the courts to regard each as effective." *Whitaker Holding Corp. v. Power Brake Supply (In re Olympia Holding Corp.),* 1994 WL 519044, *7, 1994 U.S.Dist. LEXIS 13511, *18 (M.D.Fla.1994). Adequate protection prevents loss to secured creditors during a case by requiring debtors to pay secured creditors for depreciation of their collateral prior to confirmation. If secured creditors' secured claims were fixed at filing, there would be no need for these payments—the creditor would automatically receive that value in a plan or liquidation. *See United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 372–73, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1988).

■ Although not explicitly ruling on this issue, the Supreme Court and Eleventh Circuit have in recent years referred to this issue in a manner which suggests their likely

---

5. The confirmation standards for Chapter 11 cases are similar. 11 U.S.C. § 1129(b)(2)(A). The case law as to Chapter 11 supports the theory that the valuation of collateral should be done at or close to a confirmation hearing following the same reasoning. *In re Savannah Gardens–Oaktree,* 146 B.R. 306 (Bankr.S.D.Ga.1992); *In re Landing Assoc., Ltd.,* 122 B.R. 288 (Bankr. W.D.Tex.1990); *In re Seip,* 116 B.R. 709 (Bankr. D.Neb.1990); *In re Flagler–at–First Assoc., Ltd.,* 101 B.R. 372 (Bankr.S.D.Fla.1989); *Matter of Kain,* 86 B.R. 506 (Bankr.W.D.Mich.1988); *In re Datair Sys. Corp.,* 42 B.R. 241 (Bankr.N.D.Ill. 1984); *Fox v. Peck Iron & Metal Co.,* 25 B.R. 674 (Bankr.S.D.Cal.1982).

agreement with the *Johnson* theory. In a footnote, the Supreme Court states, citing COLLIERS, that Section 1325(a)(5)(B) requires valuation of a secured claim at the date of confirmation. *Rake v. Wade*, —— U.S. ——, ——, n. 8, 113 S.Ct. 2187, 2192, n. 8, 124 L.Ed.2d 424 (1993). The Eleventh Circuit, in *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069 (11th Cir.1990), dealt with issues raised by a secured creditor appealing an order confirming the Calvert's Chapter 13 plan. The bankruptcy court, on its own motion, had valued Green Tree's collateral at a confirmation hearing. Green Tree alleged it had no notice that a Section 506(a) hearing to determine secured status would be held. The Eleventh Circuit held that a valuation of Green Tree's collateral under 11 U.S.C. § 506(a) without notice to Green Tree was improper.[6] The *Calvert* case contains a footnote in which the Eleventh Circuit described the difference between Sections 502 and 506 and *in dicta* stated that the valuation of collateral is to be determined "in conjunction with the confirmation hearing on the proposed bankruptcy plan." *Calvert* at 1071, n. 1.

■ The Fifth Amendment problem is nonexistent under the *Johnson* theory. Since a secured creditor, if it requests it, can be protected against any decline in value of its security by adequate protection payments, there is no taking which can violate the Fifth Amendment. There is just compensation for any property value decline, if requested by the creditor.

■ Having collateral valued at different times for different purposes is inefficient and time consuming according to some critics of the *Johnson* theory. Leaving aside that Section 506 *requires* valuations at different times

for different purposes, the problems of valuations for different purposes are overrated. The added time for several valuations is usually measurable in minutes not hours. Secondly, several valuations are only required where specifically requested by a creditor and when adequate protection must properly be given. A creditor by filing a proof of claim does not trigger an entitlement to adequate protection of its secured claim from the date of the filing of the case. In most instances, only when adequate protection is properly requested by motion or response to a motion is such relief granted and then only prospectively from the date of the request.[7] *Norwest Bank Worthington v. Ahlers (In re Ahlers)*, 794 F.2d 388, 395 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Hinckley*, 40 B.R. 679 (Bankr.D.Utah 1984) *Contra Lincoln Nat'l Life Ins. Co. v. Craddock–Terry Shoe Corp. (In re Craddock Terry Shoe Corp.)*, 98 B.R. 250 (Bankr.W.D.Va. 1988). Motions requesting Section 361 protection in Chapter 13 cases are not routine and not necessary for all secured creditors. Either the secured property is not declining in value or an agreement has been reached with the debtor in many cases. Therefore, the added work argument is a red herring.

The *Klein* theory which states that the proper valuation date is the date of confirmation because of the words value "as of the effective date of the plan" in Section 1325(a)(5)(B), is incorrect. These words are meant to modify "value" and mean that payments under a Chapter 13 plan to a secured creditor must have a value as of the effective date equal to the then collateral value. *See Beard* at 324–25. The words do not mean that the valuation of the collateral must be done at confirmation. That is clear from Section 506, not the language of Section 1325(a).

6. This Court would argue that the holding in this case is incorrect. The Eleventh Circuit should have been asked to consider the impact of Section 1325(a)(5)(B) on the notice issue. Any secured creditor that receives notice of a plan confirmation hearing implicitly knows that to determine whether a Chapter 13 plan can be confirmed at all requires valuation of the collateral securing the claim.

7. Section 364(d) does not state that the creditor must request adequate protection if its lien is to be primed. The code section appears to require the court to order adequate protection in all cases.

■ For these reasons, the Court finds that the *Johnson* theory is the proper one and will determine the value of the Kennedy's car as of the confirmation hearing. The Court finds that the automobile was worth $2,500 as of the confirmation hearing date. This was what the Debtors believed its value to be and they were the only ones who drove it. That value is the purchase price, less wear and tear, and repair costs. The Pearl representative believed the value was $800 to $3,325. She had inspected but not driven the car. The $3,325 represents Blue Book retail value in September 1994 less repairs of $900; however, the retail value doesn't take into account how Pearl normally disposes of its cars—auto auctions—which means the value to Pearl is actually lower than retail N.A.D.A. value and, according to the Blue Book, the value would be closer to wholesale value, or $2,750 less the $900 of repairs. *See In re Mitchell*, 954 F.2d 557 (9th Cir.1992) (wholesale N.A.D.A. not retail N.A.D.A. is appropriate valuation standard); *Valley Nat'l Bank of Arizona v. Malody (In re Malody)*, 102 B.R. 745 (9th Cir. BAP 1989); *Dominion Bank v. Thayer (In re Thayer)*, 98 B.R. 748 (Bankr.W.D.Va.1989) (average of wholesale and retail N.A.D.A. values is appropriate). The debtors' $2,500 valuation is higher than the Blue Book wholesale value (less repairs) and is reasonable based on the evidence. Since the value is less than the debt, no attorneys fees or interest may be added.

## II.

■ Pearl couched its objection to the Kennedys' plan in terms of a failure of adequate protection under Section 361 instead of a plan objection under Section 1325(a)(5)(B). The Court will consider the pleading, first, as a request for adequate protection, and, then, as a plan objection since it is not clear which is requested. As a request for adequate protection, it directly conflicts with Pearl's theory that the secured claim of Pearl should be set as of the case filing date. If so, no decline in value occurs that needs to be compensated. If the Court treats it as an adequate protection request based on this Court's ruling that value of the collateral can fluctuate, then adequate protection may be due from the date of the request for such protection—November 17, 1994—when the objection to confirmation was lodged. Even though not couched in a proper relief from stay motion, because Pearl was not aware of this Court's views on this issue, the Court will, on equitable grounds, allow Pearl to show what decline in value, if any, occurred to the vehicle from November 17, 1994 to January 12, 1995. Pearl must file a written motion requesting this relief by February 10, 1995. The Court will determine if any modifications to the plan are necessary to deal with this issue after a hearing on the motion.

Treating Pearl's request for adequate protection as a plan objection, the Court believes there are six separate objections. Each is treated below.

■ 1. Under Section 1325(a)(5)(B) of the Code, a Court shall confirm a plan if the plan provides that the secured claimants retain their liens and receive the present value of their security under the plan. The Kennedy plan does not specify that Pearl is retaining its lien and the plan must be amended to provide this before confirmation. *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 554 (5th Cir.1985).

■ 2. Pearl will receive the present value of its $2,500 collateral if an appropriate interest rate is paid to it. An appropriate interest rate is one which provides the creditor with the present value of its claim over time. Depending on the case, evidence as to the proper interest rate may include the contract rate, the prevailing market rate at the time of confirmation, the creditor's cost of capital and cost of service, the creditor's profit, the debtor's situation, the type and condition of the collateral, etc. A proper interest rate may take into account what the secured creditor would charge, at the effective date of the plan, for a loan of similar character, amount and duration. *General Motors Acceptance Corp. v. Jones*, 999 F.2d 63 (3d. Cir.1993). In this case, the evidence

indicated 27.9% was the lawful commercial rate charged by Pearl in June 1994 at the loan's inception. It is the only evidence presented and is an appropriate interest rate under the case law. The Court holds that the plan can be confirmed over Pearl's objection if the contract rate is utilized in payment of the secured debt. *In re Whatley*, 134 B.R. 561 (Bankr.S.D.Miss.1991); *In re Smith*, 42 B.R. 198 (Bankr.N.D.Ga.1984).

■ 3. Pearl also objects to its loan being extended over a period longer than the loan life of the vehicle. Although it is not exactly clear from the plan when the loan will be fully paid, if Pearl receives $150 per month, within 24 months it would be paid $3,600.[8] Debtors have already paid $2,164.58 to the Chapter 13 Trustee which is 4½ months of plan payments. If the plan is confirmed, Pearl will immediately be paid 5 months of payments or $750 leaving about 19 months to pay the loan in full. According to the testimony, the automobile will have loan value to September 1996. Pearl will be paid in full by approximately that date. Its collateral value is protected.

■ 4. Pearl also objects to the fact that the plan does not specifically require insurance coverage on the vehicle after confirmation. The security agreement already so provides.[9] The bankruptcy court, to the extent a security agreement is not inconsistent with bankruptcy law, upholds the parties' contract. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Therefore, any plan provision would be duplicative. The Debtor also testified the car is insured through the insurance coverage the Chapter 13 Trustee has arranged for debtors. These facts are sufficient to allow confirmation. After confirmation, Pearl has a right to bring a relief from stay motion if the plan provisions and contract are not complied with since a Chapter 13 debtor receives no discharge until the completion of the plan. Sections 1328(a) and 362(c)(2).

■ 5. Pearl objects to the failure of the plan to provide "drop dead" relief to it. A "drop dead" clause in an order or plan allows a creditor to exercise its state law remedies upon default of a debtor under a plan without seeking further permission from the bankruptcy court. Most courts approve "drop dead" clauses when the parties agree to them. *In re Standfield*, 152 B.R. 528, 540 (Bankr.N.D.Ill.1993). However, if the parties don't agree, both are left to their statutory remedies. Neither Section 1325 nor any other sections of the Bankruptcy Code require such relief to be given to a secured creditor by a debtor. The plan can be confirmed over this objection.

■ 6. Finally, Pearl implies that the Kennedys did not propose this plan in good faith because they filed a Chapter 13 petition 2½ months after entering into a loan with Pearl and because of Pearl's proposed treatment in the plan. There was no evidence to support any improper motive or plan.

Therefore, it is ORDERED that confirmation of the plan of Debtors filed January 12, 1995 is approved subject to these modifications:

1. Language must be inserted indicating Pearl Finance Co. retains its lien securing its claim.

2. The plan must provide Pearl with 27.9% interest on the $2,500 secured debt.

---

**8.** The Court is using 24 months as an example only. In this period, Pearl would be paid $1,100 more than its claim amount which should more than cover the 27.9% interest.

**9.** See Creditor Exhibit 1, p. 2, "Insurance."