**In re Donna LONGBINE.**

**No. 00–32943–H2–13.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 6, 2000.

---

**3.** *See, In re Sitarz,* 150 B.R. 710 (Bankr. D.Minn.1993).

Reese Baker, Houston, TX, for Debtor.

Rex Kesler, Houston, TX, for Premier.

David Peake, Houston, TX, Chapter 13 Trustee.

### ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN AND SETTING DEADLINES AND OTHER SCHEDULING

WESLEY W. STEEN, Bankruptcy Judge.

The Debtor proposes to cram down a chapter 13 plan over the objection of a creditor with a lien on the Debtor's motor vehicle. The dispute between the Debtor and the secured lender is whether the allowed secured claim should be determined by the value of the collateral on the bankruptcy petition date or on the date that the chapter 13 plan is confirmed. For reasons set forth below, the Court concludes that the bankruptcy petition date is the appropriate valuation date for purposes of cram down of a chapter 13 plan. Therefore, by separate order issued this date, the Court has denied confirmation of the Debtor's chapter 13 plan. The order also sets forth certain deadlines for plan amendment and sets a confirmation hearing on the amended plan.

## JURISDICTION

This is a contested matter, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b). By Order dated August 9, 1984, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B) and (L). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. § 157(b)(1). No party has objected to the exercise of core jurisdiction by the undersigned bankruptcy judge.

## CONTENTIONS

Donna Longbine (the "Debtor") filed this chapter 13 case on March 29, 2000. Because the Debtor had filed several motions to avoid liens and because Debtor's counsel was negotiating with counsel for Premier Auto Finance, L.P. ("Premier") concerning treatment of Premier's secured claim under the plan, the initial confirmation hearing was continued until October 27, 2000.

The Debtor and Premier were not able to reach agreement. Therefore, on October 27 the Court conducted a hearing on the objection to confirmation. The dispute is limited to the valuation of the Debtor's vehicle. Initially, the dispute concerned only whether the vehicle should be valued as of the date that the bankruptcy petition was filed or whether it should be valued as of the effective date of the Debtor's bankruptcy plan. However, perhaps because the evidence indicates that the values on those dates are not materially different, the Debtor, in a post-hearing memorandum, has argued that wholesale value (or an average of wholesale and retail value) is more appropriate.

## FACTS

On January 8, 2000, the Debtor purchased a 1995 Nissan Pathfinder. The Texas Certificate of Title discloses that the odometer reading was approximately 69,000 miles. To purchase the vehicle, the Debtor signed a Retail Installment Contract and Security Agreement showing:

| | |
|---|---|
| Down Payment | $ 2,000.00 |
| Amount Financed | $14,935.88 |
| Total Sales Price (including interest) | $24,767.48 |

Less than four months later, the Debtor filed this bankruptcy case. Post-bankruptcy, the Debtor canceled the extended warranty contract and the credit life insurance contract, resulting in a credit of $1,530.76. After all credits (including payments) on the contract, the balance due on the debt is $13,639.27.

Premier's witness provided the only substantial valuation evidence at trial. He testified that the value of the vehicle in May, 2000 was $13,000. He testified that the vehicle depreciates about $150 per month.[1] He stated that valuation depends on many variables in addition to depreciation. Although the testimony was not absolutely clear, the Court concludes that he meant that valuation of a vehicle is a function of market forces as well as depreciation, and is not merely a mathematical calculation. In his opinion, which was virtually uncontroverted, the retail value of the vehicle on the respective dates was as follows:

| | |
|---|---|
| 3/00 | $13,500 |
| 8/00 | $13,000 |
| 10/00 | $13,000 |

Wholesale, or trade-in value, as of August, 2000, was about $11,500.

The Debtor did not present credible testimony that is sufficient to support any other specific values. Debtor's evidence consisted mostly of cross-examination of Premier's witness and testimony by the Debtor that did not have substantial basis.

## CONCLUSIONS

It is undisputed that the plan provides for Premier to retain its lien. It is also undisputed that the interest rate provided in the plan is adequate. It is undisputed that Bankruptcy Code § 1325(a)(5) provides that the Court shall confirm the plan if the payments proposed under the plan are sufficient to pay to Premier the value, as of the effective date of the plan, of the allowed amount of Premier's claim. The dispute is over the amount of that allowed secured claim.

In her current plan, Debtor proposed to value the vehicle at $8,210. There is no support for that valuation of the vehicle. Why Debtor used that value in the plan is a mystery.

In Debtor's post-hearing brief, Debtor argues that the retail value of the vehicle as of the date of the hearing would be no more than $12,550 and that the wholesale value could be no more than $11,050. Debtor apparently computed these values by deducting 3 months of depreciation ($150x3=$450) from the values to which Premier's witness testified. Debtor's brief then averages those two figures to come to a value of "no more than" $11,800. But later in the brief, Debtor asserts that the value of the vehicle should be reduced "by another $1,000 for retail value and approximately $250 for trade-in value as of the confirmation date. Such an average results in a value of $11,625."[2] There was no evidence adduced at trial supporting this contention and it is not clear how it is computed.

---

1. Other testimony indicated that some NADA listings showed depreciation of $300 per month, which Debtor asserts (without citation of evidence) is more realistic.

2. Debtor also argues in a post-hearing memorandum that "[A]uction values are available to anyone who will pay a small fee to a licensed dealer to acquire a vehicle at any auction." There was no evidence in support of this contention, and therefore the Court disregards it.

■ In *Associates Commercial Corp. v. Rash*[3] the Supreme Court held that averaging the wholesale and retail values for a used vehicle does not meet the valuation requirements of Bankruptcy Code § 506(a).[4] Therefore, to the extent that Debtor suggests averaging values, that suggestion is rejected.

■ The Court is left with the issue of whether the vehicle should be valued as of the petition date or as of some other date. The only credible evidence at trial is that the retail value of the vehicle on the date of the bankruptcy petition was $13,500 and the value on the date of the confirmation hearing was $13,000. Therefore, the Court accepts these values as of the dates indicated.

Bankruptcy Code § 1325(a)(5) requires confirmation of a chapter 13 plan if "the value, as of the effective date of the plan, of property to be distributed under the plan ... is not less than the allowed amount of such claim." Debtor argues that this reference to "the effective date of the plan" establishes the appropriate date. That is not correct. The statutory reference establishes the date for the present value calculation to determine whether the interest rate is sufficient.[5]

The allowed amount of a secured creditor's claim is determined under the rules established in Bankruptcy Code § 506(a) which requires the bankruptcy court to determine the value of collateral (and thus the allowed amount of the secured claim) "in light of the purpose of the valuation ..."

*Collier on Bankruptcy*, ¶ 506.03[7][c] states that "In general, the collateral is to be valued as of the effective date of the debtor's plan." Surprisingly, there are lit-

erally dozens of bankruptcy court cases on this issue. Bankruptcy judges agree neither on the result nor on the appropriate analysis. Despite the implications of such disagreement, many, if not most, of these decisions purport to apply the plain language of the statute. There do not appear to be any circuit court decisions on point.

The best analysis of the existing jurisprudence appears to be Judge Mahoney's opinion in *In re Kennedy*, 177 B.R. 967 (Bkrtcy.S.D.Ala.1995). This Court adopts her excellent explanation and discussion of the jurisprudence as it existed on the date of that opinion.

> There are three different theories espoused by the cases: (1) the date of filing theory ..., (2) the effective date theory ..., and (3) the date of confirmation ....theory.[6]

The *Kennedy* decision discusses the three lines of cases and adopts the "date of confirmation" theory (which it finds to be the majority view) because:

1. While the amount of the entire claim is fixed on the petition date, the value of the security may fluctuate throughout the case;

2. Bankruptcy Code § 506(a) establishes the valuation date because it provides that the value of the collateral "shall be determined ... in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest," and

3. Fixing the value of collateral as of the date of the bankruptcy petition conflicts with provisions relating to adequate protection because if the secured portion of creditors' claims were fixed at the date of the bankruptcy filing, there would be no need to provide

---

**3.** 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

**4.** "Whatever the attractiveness of a standard that picks the midpoint between foreclosure and replacement values, there is no warrant for it in the Code." 520 U.S. 953, 964, 117 S.Ct. 1879.

**5.** *See Collier on Bankruptcy, 15th Ed.* ¶ 1325.06[3][b][iii][B], *In re Kennedy,* 177 B.R. 967 (Bkrtcy.S.D.Ala.1995).

**6.** 177 B.R. 967, 971.

adequate protection since the creditor would be assured of full value in a plan or liquidation.

Despite great respect for the author of the opinion, and despite agreement with her analysis of the jurisprudence, this Court disagrees with the *Kennedy* conclusion.

The first two arguments are not persuasive. While it is axiomatic that the value of property changes over time (over the course of a case), that axiom does not help one to determine which value (or which date) determines the amount that the debtor must pay to the creditor. The fact that values change does not suggest that the confirmation date is the appropriate date unless one assumes that the value to be used is the most recent (or current) value. The same deficiency exists in the second argument. While it is true that the valuation must be made at "any hearing ... affecting such creditor's interest", that does not help one to determine which value (or which date) to use, unless one assumes that the value to be used is the most recent (or current) value.[7] The statute merely recognizes that values change and it recognizes that the court may decide the issue based on different considerations for different purposes, and at different hearings.

No valuation decision by a court is free from doubt. But it is not any more difficult to determine a value "as of" the petition date (perhaps 7 months prior to the hearing) than it is to determine the value "as of" the date of the hearing. The statute tells the court when it may make the decision; it does not define the date "as of" which the value is to be decided.

The third argument is even less persuasive. The argument is that adequate protection payments are not needed if plan confirmation assures that the debtor's plan will pay the value of the collateral at the petition date. If plans were confirmed in all cases, that might be true. But in many cases, if not most cases, a plan is not confirmed. Therefore, a strong (if not principal) reason for adequate protection payments is to protect a creditor from the possibility that the case will convert or be dismissed and there will be no plan to make any payments at all.[8] There does not appear to be any provision in the statute that precludes adequate protection payments prior to confirmation of a plan which payments are then credited upon confirmation of the plan.[9]

---

7. The *Kennedy* decision states that Bankruptcy Code § 506(a) "tells courts exactly ... how and when to determine the amount of the claim that is secured and/or unsecured." 177 B.R. 967, 971. The court is correct that the statute tells the courts to make the decision "in conjunction with any hearing ... on a plan affecting such creditor's interest." But, the *Kennedy* decision concludes from this language that the applicable valuation is the valuation at the date of the hearing. That is a *non sequitur*. A hearing on one date can value property "as of" another date. The practice is common in the appraisal industry. Appraisers are careful to distinguish the "effective date" of their appraisal from the date that they viewed the property, the date of comparables, and the date of a hearing in which they testify.

8. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), recognizing the risks of failed reorganizations, 520 U.S. 953, 963, 117 S.Ct. 1879.

9. Any other conclusion would generate a truly undesirable consequence. The logical result is (and the *Kennedy* decision concludes) that if a creditor does not file a motion for adequate protection, then any decline in the value of the collateral from the petition date to the date of plan confirmation is lost to the creditor. "A creditor by filing a proof of claim does not trigger an entitlement to adequate protection of its secured claim from the date of the filing of the case. In most instances, only when adequate protection is properly requested by motion or response to a motion is such relief granted and then only prospectively from the date of the request." 177 B.R. 967, 973. The *Kennedy* court exercised its equitable power to prevent this inequitable result in the circumstances then before it. 177 B.R. 967, 974, first paragraph after "II". But the Court indicated that future creditors would not be so lucky.

This turns an equitable proceeding for debt adjustment into a formalistic procedure in which a creditor's entitlement to payment de-

As noted above, *Collier* disagrees with the *Kennedy* decision, adopting the "effective date theory." But *Collier* recognizes authority contrary to both theories: *In re Hall*, 118 B.R. 671 (Bankr.S.D.Ind.1990), *In re Chapman*, 135 B.R. 11 (Bankr. M.D.Pa.1990). There are a large number of other cases, many of which decline to follow the others, distinguish the others, or recognize their disagreement with the others. A complete analysis of all cases is pointless. If that many judges disagree, it is hard to believe that the answer is in the plain language of the statute.

This Court rejects the "date of confirmation" theory for the reasons stated above. More important, the "date of filing" approach is suggested for this fact situation by the Supreme Court's approach to the analysis of § 506(a) in the *Rash* decision.

Subsequent to most bankruptcy decisions on this issue, the Supreme Court issued *Rash*. Although that decision addressed the method to value collateral, not the valuation date, the decision contains valuable guidance about the interpretation of Bankruptcy Code § 506(a) which is the governing statutory test for determination of the amount of an allowed secured claim. The Supreme Court stated that the key to interpreting § 506(a) is to recognize that the debtor has several options under the Bankruptcy Code. The Debtor can reach agreement with the creditor, the Debtor can surrender the property, or the Debtor can cram down a plan over the objection of the secured creditor. The court held that in the case of cram down, the crucial issue (for valuation decisions) is the Debtor's *use* of the collateral.

As we comprehend § 506(a), the "proposed disposition or use" of the collateral is of paramount importance to the valuation question. If a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims: surrender the collateral to the creditor, see § 1325(a)(5)(C); or, under the cram down option, keep the collateral over the creditor's objection and provide the creditor, over the life of the plan, with the equivalent of the present value of the collateral, see § 1325(a)(5)(B). The "disposition or use" of the collateral thus turns on the alternative the debtor chooses—in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor.[10]

The court emphasized that it is the Debtor's use of the property, rather than any static value in alternative markets, that is determinative of valuation for purposes of cram down. In this case, the Debtor proposes to use the property from the date of the petition. Therefore, the value as of the date of the petition appears to be the appropriate date for measuring value because the Debtor proposes to use the property for the entire time.

## SUMMARY

The Court values the vehicle at $13,500. Because Premier is undersecured, the Court will not address Premier's evidence concerning attorney's fees.

By separate order this date, various deadlines are set for plan amendment.

pends on how many motions it files. The *Kennedy* opinion illustrates this formalism: if the pleading is titled "Request for Adequate Protection" then the creditor is entitled to compensation for decline in value from the date of that motion. If the pleading is entitled "Plan Objection Because Collateral is Valued Too Low" then the creditor is not entitled to any protection from loss of value. This distinction does not appear to have any support in the statute. If it is correct, it merely means that each creditor would be wise to file a motion for adequate protection as soon as it receives notice that the bankruptcy case was filed. Informal agreements and negotiations between parties prior to filing pleadings would be discouraged.

**10.** 520 U.S. 953, 962, 117 S.Ct. 1879.