**In re Mary Elaine FARMER, Debtor.**

**No. 00–51979–13.**

United States Bankruptcy Court,
D. Montana.

Nov. 16, 2000.

---

Scott Hamilton, Kalispell, MT, for debtor.

Dean K. Knapton, Kalispell, MT, for First Citizen's Bank/Polson.

## ORDER

RALPH B. KIRSCHER, Bankruptcy Judge.

In this Chapter 13 bankruptcy, after due notice, a final hearing was held on October 26, 2000, at Missoula on the "Motion to Modify Stay" filed on September 1, 2000, by First Citizen's Bank/Polson ("FCB") and Debtor's "Response to Motion to Modify Stay" filed September 12, 2000, and Debtor's "Amended Response to Motion to Modify Stay" filed September 13, 2000. The Chapter 13 trustee filed on September 11, 2000 his consent to FCB's motion. On September 27, 2000, the court, after notice and hearing, conducted a preliminary hearing on FCB's motion and scheduled the final hearing on October 26, 2000. At the hearing on October 26, 2000, the Court, after due notice, further heard testimony on Debtor's "Motion for Valuation of Security, and Notice," filed September

12, 2000, which was amended by another "Motion for Valuation of Security, and Notice," filed on September 13, 2000. FCB never filed a response to the Debtor's original or amended motion for valuation. Debtor on October 18, 2000, filed a "Request for Hearing" requesting that her motion for valuation be set for hearing on October 26, 2000.

At the October 26, 2000, hearing, Debtor appeared and testified in support of her motion for valuation and in opposition to FCB's motion to modify, and was represented by her counsel of record, Scott Hamilton. FCB appeared through its counsel, Dean K. Knapton. In addition, Robert Sloan, a long-time employee of FCB, testified in support of FCB's motion and in opposition to Debtor's motion for valuation. FCB introduced Exhibits 1 and 2, without objection. Except for Debtor's testimony, she introduced no other testimony or exhibits in support of her motion or in opposition to FCB's motion. At the conclusion of the hearing, and after the Court's inquiry, the parties informed the Court that they did not wish to submit any briefs in support of their respective positions. Consequently, the Court took the matter under advisement.

Upon review of the file and the record, the Court sets the value of the 1995 Dodge ¾ Ton Heavy Duty SLT Diesel Pickup, model 2500, VIN 1B7KF26COSS121722, at $13100.00, for purposes of confirmation under 11 U.S.C. § 1325(a)(5)(B) and denies the motion to modify, subject to the express condition that Debtor pay FCB adequate protection payments of $215.00 per month, with the first payment commencing December 1, 2000 and continuing thereafter on the first day of each month thereafter until Debtor's Plan is confirmed. The adequate protection payments shall be applied to the secured portion of FCB's claim; further, Debtor shall maintain insurance on the truck in an amount suffi-cient to cover FCB's unpaid secured claim. In the event Debtor fails to pay said adequate protection payments when due or to maintain insurance and upon notice by FCB to the Court that such payments have not been paid after a ten (10) day notice for payment or for maintenance of insurance has been submitted by FCB to Debtor's last known address, with a copy to her attorney at his business address, the stay will be modified by an order of this Court, without further notice or hearing, to allow FCB to proceed with its nonbankruptcy remedies. The foregoing decision is based upon the following discussion.

## FACTS

Debtor filed this Chapter 13 case on August 3, 2000. She has been employed as a field tech for Northern Telecom for approximately 2 years. Her employment requires that she continuously travel from job site to job site. She is purchasing a used 1995 Dodge ¾ Ton Heavy Duty SLT Diesel Pickup, model 2500, VIN 1B7KF26COSS121722, pursuant to a Retail Installment Contract and Security Agreement, dated April 3, 1998, entered into between Debtor and Ronan Auto Body Sales & Service, Inc, which was assigned to FCB. Debtor, through her response and amended response to FCB's motion to modify, admits and raises no objection to FCB's valid security interest or its perfection.[1] The truck has traveled approximately 135,000 miles and is insured by Progressive Insurance. Given requirements of Debtor's employment, she lives in a 1996 Royals International 5th Wheel trailer, which she tows with her truck. Under direct testimony, Debtor described the condition of her truck as good, but not excellent: other that usual wear and tear, it has scratches, a broken windshield, one broken electric power window, and a slug-

---

1. No perfection documentation is attached to FCB's proof of claim, filed September 8, 2000.

gish transmission, for which problem no apparent reason can be discovered.

Debtor testified that over a year ago she inquired with an unnamed auto dealer as to the value he would give her for the described truck. She understood he would offer $10,000.00 for the truck. Given the time from the dealer inquiry and the petition date, she reduced the value to $9,800.00 for purposes of listing the truck in Schedule B. No other testimony on value was submitted by Debtor and Debtor submitted no evidence on the cost necessary to correct the above identified repairs. FCB's witness, Robert Sloan ("Sloan") testified as to value based on his experience and on the valuation data contained in the NADA Official Used Car Guide for July 2000 (Ex. 1) and in the Kelly Blue Book for August 29, 2000 (Ex. 2). Sloan further testified that he last saw the truck in the bank parking lot during August 1999 and had not examined it since then to determine its current condition. The NADA value is $14,175.00 and the Kelly Blue Book [2] value is $14,580.00 for a two wheel truck. Sloan then added $2,000.00 to the Kelly Blue Book value for four wheel drive calculating a total value of $16,580.00. Sloan testified that in his opinion the value of the truck is $14,500.00. Neither Debtor nor Sloan knew the exact number of unpaid payments, but estimated that approximately 12 payments were unpaid. Based on FCB's proof of claim, the unpaid debt is $16,759.01, which includes principal, interest to August 1, 2000, and late charges.

Debtor is current in all preconfirmation plan payments in the amount of $635.00 per month to the Trustee, however, the confirmation of Debtor's proposed plan will not occur until approximately January 2001.

**2.** Derived from the Jul–Aug 2000 edition, which contains this qualification: This represents a fully reconditioned vehicle in excellent condition with a clean title history. This retail price is not a trade-in or private party value, but rather assumes that a dealer has

## ISSUES

1. What value should be placed on the 1995 truck for purposes of confirmation;

2. What date is used in valuing collateral for motions to modify and for confirmation; and

3. If the Motion to Modify Stay is not granted, what value should be placed on the 1995 truck and what adequate protection payments should be paid to FCB?

## DISCUSSION

FCB filed its motion under 11 U.S.C. § 362(d)(1). This statute, in pertinent part, provides: "... the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). FCB did not move for relief under 11 U.S.C. § 362(d)(2). Under 11 U.S.C. § 362(g), the party requesting relief from the automatic stay has the burden on the issue of debtor's equity in property and the opposing party has the burden on all other issues. *See First Interstate Bank of Billings v. Interstate Distrib. Co., Inc. (In re Interstate Distributing Co., Inc.)*, 13 Mont.B.R. 86, 89 (D.Mont.1993). Consequently, the Debtor has the burden to establish that FCB is adequately protected. Adequate protection payments under the Bankruptcy Code is addressed in 11 U.S.C. § 361. It provides in pertinent part:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in proper-

absorbed the cost of making the vehicle ready for sale, reconditioning, advertising, sales commissions, arranging for financing and insurance and standing behind the vehicle for any mechanical or safety problems.

ty, such adequate protection must be provided by—

(1) requiring the trustee to make ... periodic cash payments to such entity, to the extent that the stay under section 362 of this title ... results in a decrease in the value of such entity's interest in such property....

The U.S. Bankruptcy Appellate Panel of the Ninth Circuit in *First Federal Bank of California v. Weinstein (In re Weinstein)*[3], 227 B.R. 284, 296 (9th Cir. BAP 1998), discusses the purpose for adequate protection payments:

Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process. *See Paccom Leasing Corp. v. Deico Elecs., Inc. (In re Deico Elecs., Inc.)*, 139 B.R. 945, 947 (9th Cir. BAP 1992). If the value of the collateral decreases, the creditor is entitled to cash payments so that the value of its interest in the collateral remains constant. 11 U.S.C. §§ 362(d)(1) and 361(1); *see also In re Addison Properties Ltd. Partnership*, 185 B.R. 766, 769 (Bankr.N.D.Ill.1995). Thus, the amount by which the collateral depreciates is the amount of adequate protection to which the secured creditor is entitled. [citation omitted]. *Deico Elecs.*, 139 B.R. at 947. As the Supreme Court explained in *Timbers*, adequate protection payments cannot be used to compensate the creditor for lost interest or to provide lost opportunity costs. 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740.

Given the purpose of adequate protection, I will first consider the date upon which the valuation of FCB's collateral should be made. Three general approaches have been used to determine valuation in the adequate protection and confirmation contexts: (1) single valuation or date of petition valuation; (2) effective date of the

plan valuation; and (3) multiple (or continuing) valuations. *In re Cason*, 190 B.R. 917, 924–25 (Bankr.N.D.Ala.1995); *In re Addison Properties Ltd. Partnership*, 185 B.R. 766, 771–83 (Bankr.N.D.Ill.1995) (dual valuation); and *In re Kennedy*, 177 B.R. 967, 971 (Bankr.S.D.Ala.1995). In determining which approach to follow, one must review several Code provisions. Section 502(b)[4] states, in pertinent part, "... the court ... shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount...." Section 506(a) states, in pertinent part,

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

Section 1325(a) states, in pertinent part, "... the court shall confirm a plan if—... (5) with respect to each allowed secured claim provided for by the plan—... (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan on account of such claim is not less than the allowed amount of such claim[.]" Based upon § 502, the amount of a claim is determined as of the date of filing of the petition. Consequently, the amount of the claim will not change, but the secured and unsecured portions of the claim may change. *See* § 506 and *In re Kennedy*, 177 B.R. at 972. Judge Meyers,

---

**3.** Although *Weinstein* is a chapter 11 case, I believe the same principles concerning adequate protection apply given the general applicability provision of 11 U.S.C. § 103.

**4.** Unless otherwise noted, Code section citation shall refer to the U.S. Bankruptcy Code §§ 101–1330.

in an early decision, *LaJolla Mortgage Fund v. Rancho El Cajon Associates,* 18 B.R. 283, 287 (Bankr.S.D.Cal.1982), stated "... the value on the date, on which the petition commencing the case is filed, should be the benchmark ..." for calculating the amount of the claim entitled to adequate protection. This benchmark for calculating adequate protection is consistent with the dual valuation approach discussed by Judge Wedoff in *Addison Properties,* 185 B.R. at 784. The filing date of the bankruptcy petition shall be used to determine the value of the secured portion of the creditor's claim and to determine the amount of adequate protection payments necessary to protect the creditor against depreciation during the administration of debtor's case prior to confirmation. However, the adequate protection payments shall commence prospectively from the date of the request. *Addison Properties,* 185 B.R. at 779, n. 15.[5] In the case *sub judice,* the value for the vehicle as of the date of the filing of the petition, on August 3, 2000, is $14,175.00.

■ Under the dual valuation method, valuation for confirmation purposes shall be determined as of the effective date of the plan[6] as required by 11 U.S.C. § 1325(a)(5)(B)(ii). This valuation date for confirmation purposes has previously been adopted in Montana and is consistent with the foregoing analysis discussing the dual valuation method. *See In re Barnes,* 13 Mont.B.R. 455, 460–63 (Bankr.D.Mont. 1994); and *In re Rivers,* 10 Mont.B.R. 210, 211 (Bankr.D.Mont.1991).

■ As the value is established for purposes of FCB's motion, it becomes necessary to extrapolate from the evidence submitted a monthly depreciation amount so the value of the truck can be calculated for purposes of confirmation. Debtor purchased the used truck on April 3, 1998 from an automobile dealer, Ronan Auto Body Sales & Service, Inc., for $20,200.00. From April 3, 1998 through August 3, 2000 (28 months), the value has depreciated from $20,200.00 to $14,175.00, or $6,025.00. In dividing $6,025.00 by 28 months the vehicle arguably has depreciated by approximately $215.00[7] each month. For purposes of calculating the value for confirmation which Debtor will need to use in determining the allowed secured claim established through her motion for valuation, the monthly calculated depreciation of $215.00 is deducted from the petition date value of $14,175.00 for five (5) additional months (August 3, 2000 through January 3, 2001). The value of the truck for confirmation purposes is $13,100.00 ($14,175 less ($215.00 times 5)). Debtor's plan will require an amendment to the amount of FCB's allowed secured claim set forth in section 1.(b), entitled "Impaired Secured

---

5. In note 15, Judge Wedoff states: "A number of bankruptcy decisions have held that a secured creditor whose collateral is declining in value is only entitled to receive adequate protection payments 'prospectively from the date of the request.' *See In re Kennedy,* 177 B.R. 967, 973 (Bankr.S.D.Ala.1995) (collecting authorities). This does not contradict the principle that the claim subject to adequate protection is the value as of filing, it merely sets the point at which payments for a decline from that value should commence. *In re Bear Creek Ministorage, Inc.,* 49 B.R. 454, 458 n. 11 (Bankr.S.D.Tex.1985), *rev'd on other grounds sub nom. In re Timbers of Inwood Forest Assocs., Ltd.,* 793 F.2d 1380 (5th Cir.1986), *reversal aff'd. sub nom., United Savings Association of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (holding that adequate protection is required from the date of filing, but 'adequate protection payments may not begin until after a motion for § 362(d) relief is filed')."

6. Although some discussion by the courts exists concerning the distinction between the confirmation hearing date and the "effective date of the plan," given the automatic ten (10) day stay for confirmation orders under F.R.B.P. 7062, this Court will use the confirmation hearing date for determining value under 11 U.S.C. § 1325(a)(5)(B), except in extremely unusual circumstances where daily depreciation can be materially substantiated. *See In re Crain,* 243 B.R. 75, 82–3 (Bankr. C.D.Cal.1999).

7. Rounded to the nearest dollar.

Claims". Although this estimated value for confirmation is extrapolated from the evidence introduced during the hearing, given the lack of any specific evidence on depreciation, it is consistent with the analysis required by *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997): "In sum, under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the 'proposed ... use.'[8] The monthly depreciation occurring from the date Debtor purchased the used truck through the date of the petition as determined above has been extended through the anticipated date of confirmation.[9] Consequently, this methodology applies a calculus consistent with the original used purchase price and the depreciated price Debtor may have to pay in obtaining a similar truck for her contemplated use at the time of confirmation. This court in *In re Miller*, 16 Mont.B.R. 179, 180 (Bankr. D.Mont.1997), discussed the meaning of "replacement value" by stating, "The [U.S. Supreme Court] explained that it uses the term 'replacement-value' synonymously with the Ninth Circuit's understanding of

the term 'fair market value' in *In re Taffi*, 96 F.3d 1190, 1191–1192 (9th Cir.1996). (citation omitted). 'By replacement value, we mean the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition.' (citation omitted)."

■ I determined above based upon evidence presented and through the extrapolation used to determine the monthly depreciation that the truck is depreciating in the amount $215.00 per month. "Thus, the amount by which the collateral depreciates is the amount of adequate protection to which the secured creditor is entitled." *In re Weinstein*, 227 B.R. 284, 296 (9th Cir. BAP 1998). This adequate protection payment of $215.00 shall be paid by Debtor to FCB, commencing December 1, 2000 and continuing thereafter on the first day of each month through the confirmation date of Debtor's plan. Such payments shall be applied to the secured portion of FCB's principal claim and not to any interest accruing on the secured portion of the claim as FCB is undersecured[10] and not to any portion of the unsecured portion of FCB's claim[11]. *See* 3 KING, COLLIER ON BANKRUPTCY, ¶ 361.03[2][a][i] and [ii].

8. In the reported decision this footnote is identified as "footnote 6" and states:
    Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property. We note, however, that replacement value, in this context, should not include certain items. For example, where the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary: A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning. Cf. [*In re Rash*, 90 F.3d 1036, 1051–52 (5th Cir.1996).] Nor should the creditor gain from modifications to the property—

e.g., the addition of accessories to a vehicle—to which a creditor's lien would not extend under state law.
*Rash*, 117 S.Ct. at 1886.

9. If the truck had been new and not used, then the initial new vehicle depreciation occurring when the truck was driven off the dealer's lot may have been greater than the depreciation occurring when the used truck was purchased.

10. As FCB is undersecured, it would not be entitled to accrue interest on the secured portion of its claim. Only if FCB was oversecured would it be able to apply the adequate protection payments to any interest accruing on the secured portion of its claim. *See* 3 KING, COLLIER ON BANKRUPTCY, ¶ 361.03[2][a][ii] and *First Federal Bank of California v. Weinstein (In re Weinstein)*, 227 B.R. 284, 297 (9th Cir. BAP 1998).

11. A creditor holding an undersecured claim receives a pro rata distribution on its under- or unsecured claim with other creditors hold-

Based upon the foregoing,

IT IS ORDERED that under the dual valuation method, the petition date shall be used as the date to establish a value for motions to modify or for relief from the automatic stay, and the confirmation date shall be used as the date to establish the value for satisfying the confirmation requirements of 11 U.S.C. § 1325(a)(5)(B).

IT IS FURTHER ORDERED that the 1995 Dodge truck shall be valued at $14,175.00 for purposes of considering FCB's motion to modify stay and shall be valued at $13,100.00 for purposes of satisfying 11 U.S.C. § 1325(a)(5)(B). Debtor has ten (10) days from the date of this order to amend her plan to reflect the confirmation value of $13,100.00 for the 1995 Dodge truck in Section 1.(b).

■ IT IS FURTHER ORDERED that FCB's motion to modify stay filed September 1, 2000 is denied, subject to the condition that Debtor pay the required adequate protection payments as specified herein; Debtor shall pay to FCB adequate protection payments to FCB in the amount of $215.00, commencing December 1, 2000 and continuing thereafter on the first day of each month through confirmation of Debtor's plan and shall be applied to secured portion of FCB's claim. Debtor shall maintain insurance on the 1995 Dodge truck in an amount sufficient to cover FCB's unpaid secured claim. Such payments shall be in addition to the Debtor's plan payments to the Trustee.

IT IS FURTHER ORDERED that in the event Debtor fails to pay the adequate protection payments or to maintain truck insurance as required herein, and if FCB submits a ten (10) day notice to Debtor at her last known address, with a copy to her attorney at his business address, of her nonpayment or failure to maintain insurance which Debtor fails to cure within such ten (10) day period and if the Court is notified through a written notice of such failure to cure, then an order modifying the stay allowing FCB to pursue its non-bankruptcy remedies shall be entered without further notice or hearing.

ing unsecured claims. *See First Federal Bank of California v. Weinstein (In re Weinstein),* 227 B.R. 284, 297 (9th Cir. BAP 1998).