NOT FOR PUBLICATION

FILED

APR 15 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1502-KiPaTa |
| ALFREDO PALACIOS, | Bk. No.   12-31480-WB |
| Debtor. | |
| ALFREDO PALACIOS, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| UPSIDE INVESTMENTS LP, | |
| Appellee. | |

Argued and Submitted on March 22, 2013,
at Pasadena, California

Filed - April 15, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia W. Brand, Bankruptcy Judge, Presiding

Appearances:    Andrew Edward Smyth, Esq. argued for appellant,
Alfredo Palacios; Daniel Singer, Esq. of the Law
Offices of Les Zieve argued for appellee, Upside
Investments LP.

Before: KIRSCHER, PAPPAS and TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Appellant, chapter 13[2] debtor Alfredo Palacios ("Palacios"), appeals an order granting appellee, Upside Investments LP ("Upside"), relief from the automatic stay to pursue its foreclosure rights against property owned by Palacios. We AFFIRM in part and REVERSE in part.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Palacios (and his then-wife, Leandra) obtained a fee interest in property located in South Gate, California ("Property") in 1994. On or about February 27, 2010, Palacios obtained a loan for $200,000 from Upside. In exchange for the loan, Palacios executed a promissory note ("Note") and first deed of trust ("DOT") against the Property in favor of Upside.[4] According to the Note, Palacios was to make interest only payments of $2,000 per month for 23 months at 12% interest, to begin on March 1, 2010, with a balloon payment of the remaining $202,000 balance due, in full, on March 1, 2012. Palacios agreed to pay interest on any unpaid principal until the full amount of principal had been paid and to make monthly payments until he had paid the entire principal, interest and any other charges he might owe under the Note. If Palacios failed to pay the full amount of each monthly payment

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] In order to fully understand the facts underlying this appeal, we have taken judicial notice of certain documents filed with the bankruptcy court on its electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] A second deed of trust in the amount of $60,000 held by Jose and Hilda Jimenez also exists on the Property.

-2-

due, the Note holder could demand immediate payment of all amounts owed under the Note. Payments were to be made to The Argus Group ("Argus"), servicer of the loan. Under the terms of the DOT, Palacios was required to "provide, maintain and deliver" hazard insurance on the Property with loss payable to Upside.

Palacios defaulted on the loan. Upside recorded a notice of default on February 16, 2012. A foreclosure sale of the Property was scheduled for June 21, 2012.

To stop the foreclosure, Palacios filed a chapter 13 bankruptcy case on June 20, 2012, thus imposing the automatic stay under § 362(a). In his Schedule D, Palacios valued the Property, which was his principal residence and place of business, at $321,000 and asserted that the value of Upside's secured claim was $216,965.46. It is undisputed that the debt to Upside had matured by its own terms prior to the bankruptcy, and that Palacios did not pay the final balloon payment as agreed.

In his proposed chapter 13 plan filed with his bankruptcy petition, Palacios asserted that the prepetition arrears owed to Upside on the loan were $15,205.42, and he proposed to cure the arrearages by paying Upside $253.42 per month for sixty months at 0% interest. Except for the arrearages, Palacios's plan did not provide for any other monthly mortgage payments to Upside.

Upside opposed confirmation of Palacios's proposed chapter 13 plan, contending that the actual prepetition arrears owed were $19,687.91 and, because the loan had fully matured, it should have been classified as a Class 3 creditor, which required monthly

-3-

payments of $3,366.66 that Palacios was unable to fund.[5]

On July 28, 2012, Upside sought relief from stay under § 362(d)(1), contending that its interest in the Property was not adequately protected and that Palacios had not made postpetition payments on the Note ("Stay Relief Motion"). In support, Upside offered a declaration from Argus employee Jennifer Bercy ("Bercy"). According to Bercy, the entire Note was due and payable because it had matured on March 1, 2012. Upside's claim as of July 9 was $220,937.22, including the $200,000 principal, $14,597.26 in accrued interest, and other late charges and costs. Bercy asserted that Palacios's total postpetition delinquency on the loan was $5,740.63, and that an additional payment of $4,914.63 was due and payable on August 1, 2012. Bercy conceded that Upside had received a $2,000 payment from Palacios on July 16, 2012. Finally, although Upside had not checked the box on the stay relief form indicating that Palacios's failure to provide proof of insurance on the Property was a basis for its lack of adequate protection claim, Bercy had checked the box in her declaration indicating that Upside had not been provided with evidence that the Property was currently insured, as required under the terms of the loan.

Palacios opposed the Stay Relief Motion, contending that Upside's assertion that one postpetition payment of $4,914.63 had not been made was inconsistent with its assertion that the loan had fully matured on March 1, 2012, which, in that case, argued

---

[5] The chapter 13 trustee also opposed confirmation of Palacios's proposed plan for nonfeasibility because it failed to pay Upside its prepetition claim of $19,687.

-4-

Palacios, no payments would be due and any amount due would be classified as prepetition arrearages curable through the plan.

The bankruptcy court held a hearing on the Stay Relief Motion on September 11, 2012. Palacios agreed that the Note had come due on March 1, 2012, and he was willing to pay the full amount of the Note over the term of the plan. Upside was willing to consider Palacios's proposal, but argued that based on his scheduled income, Palacios was clearly unable to make such payments. Upside further argued that it had not been provided any proof of insurance on the Property, and now taxes had come due that remained unpaid. Other than counsel's argument, Upside offered no evidence regarding the alleged unpaid taxes.

Palacios agreed with the bankruptcy court's suggestion that Upside's loan would have to be paid off in five years should the plan be confirmed. However, Palacios argued that this was a confirmation issue, not a stay relief issue. As for proof of insurance, Palacios's counsel said he was never informed that insurance needed to be provided, but he could provide it in a timely manner.

After considering the parties' arguments, the bankruptcy court orally granted the Stay Relief Motion under § 362(d)(1) for Palacios's "failure to make payments which would be required under the plan" and "lack of insurance." Hr'g Tr. (Sept. 11, 2012) 4:6-7. The court granted further relief under § 362(d)(2), based on its determination that the Property was not necessary to an effective reorganization. Id. at 4:8-9.

The bankruptcy court entered an order granting the Stay Relief Motion under § 362(d)(1) and (d)(2) on September 28, 2012

-5-

("Stay Relief Order"). Palacios timely appealed.

On October 3, 2012, the motions panel entered an order granting stay pending appeal on the condition that Palacios make monthly payments to Upside of $3,682.29, the amount that would be paid under his chapter 13 plan. The stay would terminate upon the earlier of either confirmation of a plan, or the dismissal or conversion of Palacios's case to chapter 7.[6]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion when it granted the Stay Relief Motion under § 362(d)(1)?

2. Did the bankruptcy court abuse its discretion when it granted the Stay Relief Motion under § 362(d)(2)?

## IV. STANDARD OF REVIEW

We review an order granting relief from stay for abuse of discretion. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 914 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver, Inc., 653 F.3d 820, 832 (9th Cir. 2011).

---

[6] As of the date of this Memorandum, Palacios has been making timely payments, no plan has been confirmed, and the case has not been dismissed or converted to chapter 7. In fact, the case has been idle since October 2012.

-6-

# V. DISCUSSION

**A. The bankruptcy court did not abuse its discretion when it granted the Stay Relief Motion under § 362(d)(1).**

Under § 362(d), a party in interest may request relief from the automatic stay. Section 362(d)(1) authorizes relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." "Cause" has no clear definition and is determined on a case-by-case basis. Mac Donald v. Mac Donald (In re Mac Donald), 755 F.2d 715, 717 (9th Cir. 1985); Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 921 (9th Cir. BAP 2009). The party requesting relief from the automatic stay has the burden on the issue of debtor's equity in property; the opposing party has the burden on all other issues. In re Farmer, 257 B.R. 556, 559 (Bankr. D. Mont. 2000)(citation omitted); § 362(g). If the movant establishes a prima facie case, the burden shifts to the debtor to prove adequate protection. Section 362(g).

The bankruptcy court granted relief under § 362(d)(1) because Palacios had failed to provide Upside with proof of current insurance on the Property, and because he had failed to make postpetition mortgage payments to Upside – payments the bankruptcy court contended would have been required under his eventual chapter 13 plan.

Palacios assigns several errors. He first contends he was deprived of proper notice because the bankruptcy court granted relief upon grounds which Upside's Stay Relief Motion failed to assert. For example, Palacios contends the Stay Relief Motion failed to assert that no proof of insurance had been provided to

-7-

Upside. We agree that while Upside did not check the box on the first page of the stay relief motion form F 4001-1 indicating lack of insurance as a basis for relief, Bercy's uncontroverted testimony established that Upside had not been provided with proof that the Property was currently insured, as required under the terms of the DOT. Thus, Palacios was on notice about the insurance issue prior to the stay relief hearing.

Palacios further argues that Upside's interest was adequately protected due to the approximate $100,000 equity cushion available for its $220,937.22 claim. Therefore, according to Palacios, the bankruptcy court's decision to grant Upside relief on the basis of lack of adequate protection was erroneous. Upside did not assert as a basis for relief the lack of an equity cushion. Further, nothing in the bankruptcy court's ruling indicates that it granted relief for lack of adequate protection because no equity cushion existed. Rather, one reason the bankruptcy court granted relief was because Palacios did not meet his burden of proof that he presently had insurance on the Property. A debtor's failure to insure property can be a basis to grant a secured creditor relief from stay under § 362(d)(1) for lack of adequate protection of its collateral. See Delaney-Morin v. Day (In re Delaney-Morin), 304 B.R. 365, 370 n.3 (9th Cir. BAP 2003)(a secured creditor lacks adequate protection if threatened with a decline in the property's value, and a threat to decline includes failure to maintain property insurance). Although Palacios offered to provide proof of current insurance to Upside, nothing in the record indicates that he ever did so.

Palacios also contends that the bankruptcy court erred when

-8-

it determined that relief was warranted under § 362(d)(1) due to his failure to make postpetition payments on the Note. Palacios argues that, because the loan had matured prepetition on March 1, 2012, no postpetition payments could have come due. He further argues that any payments due should have been classified as prepetition arrearages, which was an issue to be determined at confirmation, not on a motion for relief from stay.

As a general rule, chapter 13 debtors may not modify the rights of holders of claims secured solely by a security interest in real property that is the debtor's principal residence.[7] Section 1322(b)(2). However, § 1322(c)(2)[8] carves out an exception to the anti-modification rule against home mortgages, allowing modification if the last payment on the original payment schedule for the mortgage is due <u>prior</u> to the date on which the final plan payment is due. Several courts have held that § 1322(c)(2) applies to balloon mortgage payments that mature prepetition, and that § 1322(c)(2) allows chapter 13 debtors to cure such defaults by providing for full payment to the mortgagee

---

[7] Palacios has not asserted that because he also uses the Property as a place of business that the Property is not his principal residence.

[8] Section 1322(c)(2) was adopted in 1994. It provides:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law —

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325 (a)(5) of this title.

-9-

over the life of the plan. In re Jones, 188 B.R. 281, 282 (Bankr. D. Or. 1995)(concluding that § 1322(c)(2) overruled Seidel v. Larson (In re Seidel), 752 F.2d 1382 (9th Cir. 1985), which held that a debtor could not cure a prepetition fully matured mortgage because such a cure would be a modification prohibited by § 1322(b)(2)); In re Lobue, 189 B.R. 216, 218 (Bankr. S.D. Fla. 1995)(recognizing the overruling of In re Seidel); In re Chang, 185 B.R. 50, 53 (Bankr. N.D. Ill. 1995)(recognizing the overruling of In re Seidel); In re Escue, 184 B.R. 287, 293 (Bankr. M.D. Tenn. 1995). See also In re Yett, 306 B.R. 287, 292 (9th Cir. BAP 2004)(questioning the viability of In re Seidel following the 1994 addition of § 1322(c)(2)).

Any doubts of a chapter 13 debtor's ability to cure mortgage defaults such as Palacios's under the plan is further eliminated by § 1322(c)(1), which provides that, notwithstanding § 1322(b)(2) and applicable nonbankruptcy law, a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under § 1322(b)(3) or (5), until the residence is sold at a foreclosure sale. See 8 COLLIER ON BANKRUPTCY ¶ 1322.07[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012)(also recognizing the language of § 1322(c)(1) has overruled In re Seidel).

Palacios conceded at the stay relief hearing that in any proposed chapter 13 plan he would have to pay Upside the full amount of the Note over the term of the plan. We agree. However, we cannot agree with Palacios's argument that considering the matter of plan payments at this point was premature. Palacios's chapter 13 plan, filed with his bankruptcy petition nearly three months prior to the stay relief hearing, proposed to cure only the

-10-

prepetition arrearages on the Note, with monthly payments of $253.42 for sixty months. The plan proposed no monthly mortgage payments for the remaining balloon amount due and owing. As a result, the plan was unconfirmable on its face. Further, at the time of the stay relief hearing, Palacios's Schedules I and J reflected that he would be unable to pay any amount closely approximating the $3,682.29 monthly payment required to pay Upside in full. Although Palacios claimed at oral argument that his financial situation has improved due to securing a tenant, he has yet to file amended Schedules I and J to reflect this. Finally, leaving aside the proposed plan, Palacios was required under the Note to make monthly interest payments to Upside on any unpaid principal until it had been paid in full. The record established that he made only one of those $2,000 payments by the time of the hearing.

We are unable to say that the bankruptcy court abused its discretion by considering this evidence in determining that termination of the stay was warranted for "cause." See In re Redden, 2011 WL 2292312, at *10 (Bankr. S.D. Tex. June 7, 2011) (considering proposed plan and granting relief from stay where debtor would be unable to make the necessary payments to movant in full during the life of the plan); In re Moreland, 124 B.R. 921, 923 (Bankr. D. Conn. 1991)(considering proposed plan and denying relief from stay where chapter 13 debtor had proposed good faith plan payments to pay matured prepetition mortgage in full). Even if considering this evidence was somehow an abuse of the bankruptcy court's discretion, it was certainly within its right to terminate the stay due to Palacios's failure to provide

-11-

proof of current insurance on the Property.  Accordingly, the bankruptcy court did not abuse its discretion when it granted Upside relief from stay under § 362(d)(1) for "cause."

**B.    The bankruptcy court abused its discretion when it granted the Stay Relief Motion under § 362(d)(2).**

Section 362(d)(2) authorizes relief from stay when the debtor has no equity in the property and the property is not necessary to an effective reorganization.  Section 362(d)(2)(A) and (B).  Both elements of the test must be met.  See 3 COLLIER ON BANKRUPTCY at ¶ 362.07[4].  Equity is "the amount or value of a property above the total liens or charges."  Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984)(citations omitted).

The bankruptcy court granted relief under § 362(d)(2) because it determined that the Property was not necessary to an effective reorganization.  Palacios assigns several errors here, including that the court erred because the elements of § 362(d)(2) were not met as Palacios has at least $40,000 equity in the Property.

We agree that Palacios has equity in the Property.  We further note that Upside did not request any relief under § 362(d)(2), and it did not provide any evidence in support of such relief.  It is also uncontroverted that the Property serves not only as Palacios's principal residence, but also as his place of business.  Therefore, presumably, it may be necessary to an effective reorganization.

Moreover, the bankruptcy court made no detailed findings of fact and conclusions of law as to why relief was proper under § 362(d)(2), which, since this was a contested matter under Rule 9014, it was required to do under Rule 7052.  See

-12-

Rule 9014(c) incorporating Rule 7052; <u>In re Veal</u>, 450 B.R. at 919 (bankruptcy court must make findings of fact, either orally on the record or in a written decision, in contested matters, and the findings must be sufficient to enable a reviewing court to determine the factual basis for the court's ruling).

Accordingly, the bankruptcy court did abuse its discretion when it granted Upside relief from stay under § 362(d)(2).

## VI. CONCLUSION

The bankruptcy court did not abuse its discretion when it granted Upside relief under § 362(d)(1), and we AFFIRM that portion of the Stay Relief Order. However, we REVERSE the portion of the Stay Relief Order granting relief under § 362(d)(2), because the record reflects that Palacios has equity in the Property, and because the bankruptcy court did not articulate any findings on the record to support its decision to grant such relief.